*1108 KITCHENS, Justice,
for the Court:
¶ 1. Ted Boroujerdi’s home and yard were flooded with sewage that backed onto his property in February 2009. Boroujer-di filed suit against the City of Starkville (“the City”), alleging that he had suffered property damage and personal injuries as a result of the City’s negligent maintenance of its sewage system. The trial court granted summary judgment for the City, finding that the maintenance of the sewage system is a discretionary function and that the City is immune from suit pursuant to Mississippi Code Section 11-46 — 9(l)(d) and this Court’s plurality opinion in Fortenberry v. City of Jackson, 71 So.3d 1196 (Miss.2011).
¶ 2. Boroujerdi appealed, arguing that the maintenance of the sewage system is ministerial and the City is not immune from suit, that summary judgment was therefore inappropriate, and that this Court should overrule its plurality opinion in Fortenberry. We reverse the trial court’s grant of summary judgment in favor of the City. Recently, in Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014), this Court overhauled its analysis of discretionary function immunity. Accordingly, we now must revisit our treatment of sewage-system maintenance as a discretionary function. We hold that, while the overall function of maintaining a sewage system may be discretionary, certain narrower functions and duties involved with sewage maintenance may be rendered ministerial through applicable statutes, regulations, and/or ordinances. Accordingly, we remand this case to the Circuit Court of Oktibbeha County for the plaintiff to address whether his premises flooded as a result of the City’s fulfilling or its failing to fulfill a ministerial function or duty.

FACTS AND PROCEDURAL HISTORY

¶ 3. On February 27, 2009, the toilets, sinks, and tubs of Boroujerdi’s home in Starkville overflowed from sewage backup after a heavy downpour of rain. Boroujer-di called the Starkville water and sewage department to fix the problem. He walked outside to meet with the workers, and as he was walking back to his house to show them the damage, he slipped and fell in the raw sewage that had covered his driveway. Boroujerdi alleges that he suffered serious injuries as a result of the fall. Boroujerdi brought suit against the City of Starkville, averring that its reckless and negligent failure properly to maintain the sewer system had proximately caused his physical injuries and damage to his property. He alleged that similar problems had occurred on his property previously, and that the City “had been put on notice of the problems but recklessly refused to make the necessary repairs.” Boroujerdi sought compensation for medical bills and pain and suffering in the amount of $500,000.
¶ 4. The City moved for summary judgment, arguing that maintaining its sewage system is a discretionary function under Mississippi Code Section 21-27-189(b)[1] and the City was therefore immune from suit pursuant to Mississippi Code Section ll-46-9(l)(d).[2] The.City attached an affi *1109 davit from its mayor, Parker Wiseman, stating that, to his knowledge, the City had not violated any ordinance, state or federal regulation, or any waste-removal and treatment permit with respect to its sewage system. In response, Boroujerdi argued that “Starkville accepted the responsibility for repairing Plaintiffs sewage problems and thus owed Plaintiff a duty of reasonable care in their efforts.” He did not cite any potential ordinance, state or federal regulation, or waste-removal or treatment permit, the violation of which may have caused his house and lot to be flooded with sewage.
¶ 5. The trial court granted the City’s motion for summary judgment, citing this Court’s then-recent holding in Fortenber-ry, which specifically held that a municipality is immune from suit for negligent maintenance of its sewage system under Section 11 — 46—9(l)(d) because maintaining such a system is a discretionary function of the municipality. See Fortenberry, 71 So.3d at 1204. Boroujerdi appealed, asking this Court to overrule its holding in Fortenberry and hold instead that a municipality has a ministerial duty to maintain its own sewage system once it decides to construct one.
¶ 6. This Court requested and received supplemental briefing from the parties to address our intervening decision regarding discretionary function immunity in Little v. Mississippi Department of Transportation, 129 So.3d 132 (Miss.2013), and what effect, if any, state and federal statutes and regulations related to the disposal of sewage may have upon our determination of whether sewage-system maintenance is a ministerial or discretionary function.

STANDARD OF REVIEW

¶ 7. This Court conducts de novo review of a trial court’s determination that a governmental entity is immune under the Mississippi Tort Claims Act (MTCA). Fortenberry, 71 So.3d at 1199 (¶ 7) (citing City of Jackson v. Harris, 44 So.3d 927, 931 (Miss.2010)). Additionally, when reviewing a grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., 716 So.2d 543, 547 (¶ 13) (Miss.1998). We must consider all of the evidence “in the light most favorable to the non-moving party.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995) (internal citations omitted). However, the nonmoving party “must set forth specific facts showing that there is a genuine issue for trial,” and cannot simply “rest upon the mere allegations or denials of his pleadings.” M.R.C.P. 56(e).

ANALYSIS

¶ 8. The sole issue on appeal, as stated by Boroujerdi, is “whether a municipality that controls and operates a sewage system has a ministerial duty to repair and maintain the sewage system ... or whether ... the municipality has discretion ... to repair and maintain the sewage system so as to provide the municipality with immunity from liability under Mississippi Code Section 11-46-9.” Boroujerdi urges this Court to adopt the reasoning of Presiding Justice Randolph’s dissent in Fortenberry, 71 So.3d at 1204 (¶ 28), and overrule the Court’s decision, which held that a municipality’s duty to maintain its sewage system is a discretionary one, and thus is one that provides immunity from tort liability to the municipality under the MTCA.
¶ 9. The City argues that this issue was conclusively decided in Fortenberry, and that the facts in this case are even more compelling for a finding of immunity under the MTCA than those in that case. In Fortenberry, 71 So.3d at 1201 (¶ 14), the plaintiffs relied in part on an ordinance which required all sewage pipes in the City *1110 of Jackson to be of a certain diameter. Here, “there was no city ordinance which positively imposed upon the City of Stark-ville the duty to operate and maintain a sewage system.” The City included an affidavit of Starkville’s mayor, Parker Wiseman, stating that “no city ordinance had been violated with respect to Stark-ville’s operation of its sewage system.... ” The affidavit further stated that, to the mayor’s knowledge, “the City of Starkville has not violated any state or federal regulation or law or any of its waste-removal and treatment permits with respect to its operation of the sewage system, and no such violation has been alleged.” The City argues that this Court’s holding in Forten-berry is directly applicable to this case, and that the trial court was therefore correct in holding that summary judgment for the City was appropriate.
1. Fortenberry v. City of Jackson
¶ 10. Since Boroujerdi asks this Court to overrule Fortenberry, a summary of that case will be instructive. The properties of two sets of plaintiffs were damaged when sewage backup flooded their homes due to heavy rain.[3] Id. at 1198 (¶ 3). The plaintiffs sued the City of Jackson (Jackson), and the trial court granted summary judgment because it found that Jackson’s maintenance of its sewage system was a discretionary function and, therefore, the MTCA immunized the City from tort liability. Id. at 1198 (¶ 4). The Court of Appeals held that an ordinance that mandated the size of sewage pipes that could be installed in the municipality made the duty to maintain the sewage system ministerial rather than discretionary and reversed the grant of summary judgment. Fortenberry v. City of Jackson, 71 So.3d 1211, 1217-18 (Miss.Ct.App.2010). This Court granted certiorari and reversed the Court of Appeals, with a plurality of four justices holding that the ordinance mandating pipe diameters did not apply to the neighborhoods in which the plaintiffs lived, that the duty to maintain the sewage system was discretionary, and that Jackson was therefore immune under the MTCA. Fortenberry, 71 So.3d at 1203-04.
¶ 11. In reaching its decision, the plurality relied on the application of the two-part public-policy function test. Id. at 1199-1202. Historically, this Court has used that test “to determine if governmental conduct is discretionary so as to afford the governmental entity immunity.” Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 795 (¶ 20) (Miss.2012) (quotation omitted). Under the test, the Court first determines “whether the activity in question involved an element of choice or judgment[,]” and, if so, “whether that choice or judgment involved social, economic, or political-policy considerations.” Id. If the duty or activity which forms the basis of the suit “is not imposed by law and depends upon the judgment or choice of the government entity or its employee[,]” then the duty or activity is discretionary. Pratt v. Gulfport-Biloxi Reg’l Airport Auth., 97 So.3d 68, 72 (¶ 9) (Miss.2012) (citing Montgomery, 80 So.3d at 795).
¶ 12. In Fortenberry, the Court determined that the first prong of the two-part test was satisfied because the plain language of Section 21-27-189(b) permitted a municipality, in its discretion, to maintain a sewage system. Fortenberry, 71 So.3d at 1200 (¶ 10). The second prong was satisfied because “operating and maintaining sewage systems clearly implicate, specifically, both economic and social policy.” Id. at 1202 (¶ 18). As both prongs were satisfied, the Court held that discretionary *1111 function immunity applied to sewagé-sys-tem maintenance.
2. Discretionary function immunity since Fortenberry.
¶ 13. This Court’s treatment of discretionary function immunity pursuant to Section ll-46-9(d) has changed drastically since it decided Fortenberry. That change began in Little, 129 So.3d at 132, in which we confronted the issue of whether a governmental entity enjoyed immunity for its exercise of discretionary acts done in the performance of a ministerial function. In that case, three motorists sued the Mississippi Department of Transportation (MDOT), alleging that it had negligently maintained a road across which a pine tree had fallen. Id. at 134 (¶ 1). MDOT asserted immunity under the MTCA, claiming that road maintenance is a discretionary function. Id. at 134 (¶ 3). The circuit court and the Court of Appeals agreed. Id.
¶ 14. This Court reversed, holding that, while the acts involved in maintaining rights-of-way are discretionary, the function of maintaining the rights-of-way was ministerial, and therefore, under the facts presented in Little, MDOT was not immune from civil liability. There, the statute at issue, Section 65-1-65, affirmatively required that MDOT “shall ... maintain all highways....” Id. at 135 (¶ 6). Without relying upon the public-policy function test, the Court held that “[i]t is the function of a governmental entity — not the acts performed in order to achieve that function — to which immunity does or does not ascribe under the MTCA.” Id. at 138 (¶ 10).
¶ 15. More recently, we decided Brant-ley, 152 So.3d at 1106, which greatly changed the manner in which this Court analyzes discretionary function immunity. After analyzing the plain language of the discretionary function immunity statute, Section 11 — 46—9(d), and its clear directive that immunity attaches to function rather than acts, as stated in Little, this Court formally abolished the public-policy function test. Id. at 1112-13 (¶¶ 19-20). Instead, we held that determining the overarching discretionary function at issue is only the first step in the analysis. Id. at 1114 (¶ 26). “The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.” Id. at 1115 (¶ 26). We went on to hold that “a plaintiff may defeat sovereign immunity, even when a governmental entity’s act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.” Id. at 1115 (¶ 28).
¶ 16. The Court’s task in Brantley, therefore, was to determine whether the alleged act of negligently unloading a patient from a city-owned ambulance fell under a discretionary function entitling the municipality to immunity. Id. at 1116 (¶ 33). The Court held that, initially; a city was imbued with the discretion to “own, maintain, and operate an ambulance service” pursuant to the clear statutory language of Mississippi Code Section 41-55-1. Id. However, our analysis did not end there. We held that, because much of the activity of a city-run ambulance service is subject to the ministerial regulations of the State Board of Health, once a city has decided to operate and maintain its own ambulance service, “it is subject to several ministerial statutes and regulations which remove the municipality’s discretion from many functions and duties and render such *1112 functions and duties ministerial.” Id. at 1116 (¶ 34). Ultimately, the Court remanded the case to the trial court for a determination of whether the plaintiff could point to a regulation, ordinance, or statute which would render the act of removing a person from an ambulance subject to a ministerial function or duty within the larger discretionary function of the city’s having decided to establish a municipal ambulance service. Id. at 1118 (¶ 39).
¶ 17. Our abolition of the public-policy function test is at odds with our analysis of sewage-system maintenance in Fortenber-ry. As we no longer utilize the test which the Court employed to hold that sewage maintenance was a discretionary function in that case, we now must analyze the issue in accord with our current standard for the determination of governmental discretionary function immunity.[4]
3. Sewage maintenance as a discretionary function
¶ 18. Sewage maintenance is rendered discretionary by statute.
A municipality, as defined in Section 21-27-163, is authorized and empowered, in the discretion of its governmental authorities, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
[[Image here]]
(b) To construct, operate and maintain sewage systems, sewage treatment facilities and sewage disposal systems in the manner and to the extent required by the metropolitan area plan.
Miss.Code Ann. § 21-27-189 (Rev. 2007) (emphasis added).
¶ 19. If the duty or activity which forms the basis of the suit “is not imposed by law and depends upon the judgment or choice of the government entity or its employee,” then the duty or activity is discretionary. Pratt, 97 So.3d at 72 (¶ 9) (quoting Montgomery, 80 So.3d at 795). The duty to maintain a sewage system is not imposed by law upon municipalities. The language of Section 21-27-189 explicitly leaves it to the discretion of municipalities whether and how to maintain their sewage systems, if any. Accordingly, sewage maintenance, as a general function, is discretionary. This, in fact, is similar in principle to the statute[5] rendering a city ambulance service a discretionary function in Brantley. Our task now, pursuant to our holding in Brantley, is to consider whether there are narrower functions or duties concomitant to the general discretionary function of sewage maintenance that have been rendered ministerial through statute, ordinance, or regulation.
¶ 20. There are. Sewage systems must comply with the Federal Water Pollution Control Act (the “Act”), a statute which makes it unlawful to discharge raw sewage into the environment. The Act requires publicly owned sewage-treatment works to establish effluent limitations and to abide by those limitations. 33 U.S.C.A. § 1311 (2009). According to the Congressional Research Service,[6] “[ujnder this act, federal jurisdiction is broad, particularly regarding establishment of national standards or effluent limitations.... [Tjhe *1113 federal government sets the agenda and standards for pollution abatement, while states carry out day-to-day activities of implementation and enforcement.” Claudia Copeland, Clean Water Act: A Summary of the Law, http://crs.ncseonline.org/ nle/crsreports/10May/RL30030.pdf (last viewed February 11, 2014). The federal government sets the standards; and, although the states have some discretion with respect to how they will meet those standards, they have no choice but to comply. Accordingly, the function of maintaining a sewage system to maintain compliance with the Act is a ministerial function that is set within the larger discretionary function of general sewage creation and maintenance.
? 21. Additionally, the Mississippi Department of Environmental Quality (MDEQ) regulates the permits required to operate wastewater-treatment facilities and wastewater polluters. See generally Miss. Admin. Code 11-6:1.1.1. Permits must be obtained before wastewater treatment is begun by anyone. Miss. Admin. Code 11—6:1.1.1(B)(1) (“Any person proposing a discharge of wastes to waters of the State ... shall file an application in the case of [a] ... permit.”). To maintain a permit, and thus, the right to have a sewage system, “[t]he permittee shall at all times properly operate, maintain, and when necessary, promptly replace all facilities and systems of collection, treatment and control (and related appurtenances) which are installed or used by the permit-tee to achieve compliance with the conditions of this permit.” Miss. Admin. Code 11—6:1.1.4(A)(18) (emphasis added). So, an operator of a sewage system must maintain that system in order to keep the permit which allows it to operate that system.
¶ 22. These administrative, ministerial regulations apply in much the same way with regard to sewage maintenance as do the Department of Health regulations to city ambulance services referenced in Brantley. The overarching discretionary function of sewage-system maintenance, therefore, shelters several smaller functions and duties which may be ministerial according to statute, regulation, or ordinance. Pursuant to Brantley, in order to defeat sovereign immunity provided by the discretionary nature of sewage-system maintenance in this case, the plaintiff must prove that the act which caused his property to flood with sewage “furthered a more narrow function or duty ... made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.” Brantley, 152 So.3d at 1115 (¶ 28).
¶ 23. Clearly, although the legislature granted to municipalities the discretion to maintain their sewage systems initially, there remain many statutes and regulations which render ministerial certain more narrow functions of sewage-system maintenance. Operators of sewage systems in Mississippi generally obtain permits from the Mississippi Department of Environmental Quality (MDEQ),[7] the raw sewage contained in the sewage system must meet water-quality effluent limitations,[8] and all of this must be done within the boundaries provided in the federal Clean Water Act.[9] Several functions and duties involved in sewage maintenance and operation are ministerial, and if a plaintiff can show that his or her injuries were caused by the government’s act or failure to act in furtherance of one or more of such ministerial functions, that plaintiff can proceed with his or her claim.-
*1114 4. Boroujerdi’s Suit
¶ 24. In Brantley, the act which caused the injury — unloading a patient from an ambulance — was easy to identify. In this cáse, it is the City’s alleged failure to act which Boroujerdi claims caused his damages. He alleges that the City acted recklessly and with gross negligence by “failing to make adequate, necessary repairs to the sewer system while having knowledge of the necessity of same.” The City moved for summary judgment and attached an affidavit from its mayor stating that no ordinance required the city to maintain the sewage system, and that he knew of no ordinance, state or federal regulation, or permit requirement which had been violated in relation to Bo-roujerdi’s flooded home and injuries. In response to the motion for summary judgment, Boroujerdi failed to identify any ordinance or regulation or permit requirement which would have rendered the City’s inaction subject to a ministerial function. He simply reiterated that, once the City had decided to build a sewage system, the duty to maintain it became ministerial. He stated that the City’s failure to use reasonable care to repair his sewage problems proximately caused his injuries.
¶ 25. Boroujerdi has failed to point to any statute, regulation, or ordinance which would render the City’s alleged negligent inaction subject to a ministerial function. He had the opportunity to do so in response to Mayor Wiseman’s affidavit stating that the City had not violated any statutes or regulations in relation to Bo-roujerdi’s flooding. Instead, Boroujerdi chose simply to argue that the City’s duty to maintain its sewage system was ministerial once it had decided to create a sewage system. Under our holding in Brantley, Boroujerdi’s claim must fail unless he can prove that the City’s negligence in failing to repair the sewage system involved a function or duty made ministerial by a statute, regulation, or other binding directive.
¶ 26. Boroujerdi has failed to do so, thus far. However, as our treatment of discretionary function immunity changed significantly in consequence of Brantley, we find that it would be patently unfair to affirm summary judgment in the City’s favor without Boroujerdi’s having an opportunity to attempt to conform his complaint and proof to this Court’s current approach to discretionary function immunity. Sewage-system maintenance is presumptively discretionary and entitled to immunity. But on remand, if Boroujerdi can prove that the City’s alleged inaction in repairing the sewage system was related to a more narrow function made ministerial by statute, ordinance, regulation, or other binding directive, then he may proceed with his claim. If not, the City is entitled to immunity under Section 11-46-9(d), as the overarching function of sewage maintenance is a discretionary one.
CONCLUSION
¶ 27. Municipal sewage maintenance generally is a discretionary function. However, several narrower functions and duties associated with sewage maintenance are mandated by statute or regulation and thus are ministerial and removed from discretionary function immunity. If Borou-jerdi can prove that the City was engaged in a ministerial function, as described in this decision, in relation to his flooding and damages, he may proceed with his claim. Accordingly, the grant of summary judgment in favor of the City of Starkville is reversed, and the case is remanded to the Circuit Court of Oktibbeha County for further proceedings consistent with this opinion.
¶ 28. REVERSED AND REMANDED.
*1115 DICKINSON, P.J., LAMAR, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ.

. "A municipality, ... is authorized and empowered, in the discretion of its governmental authorities ... [t]o construct, operate, and maintain sewerage systems, sewage treatment facilities, and sewage disposal systems in the manner and to the extent required by the metropolitan area plan.” Miss.Code Ann. § 21-27-189(b) (Rev. 2007) (emphasis added).

. "A governmental entity and its employees acting within the coursé and scope of their employment or duties shall not be liable for any claim ... [biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity....” Miss. Code Ann. § 1 l-46-9(l)(d) (Rev. 2012).

. The suits stemmed from separate incidents at two different domiciles, but the cases were consolidated because the Court considered the same question of law in each.

. As for the dissent's suggestion that we are ignoring stare decisis, our treatment of discretionary function immunity comports with the current law of Mississippi, as the mandate has issued in Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014).

. Miss.Code Ann. § 41-55-1 (Rev. 2013).

."The Congressional Research Service (CRS) works exclusively for the United States Congress, providing policy and legal analysis to committees and Members of both the .House and Senate, regardless of party affiliation.” http://www.loc.gov/crsinfo (last viewed February 11, 2014).

. See generally Miss. Admin. Code 11-6:1.1.1.

. See generally Miss. Admin. Code 11-6:1.1.2.

.33 U.S.C.A. § 1311 (2009).