# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01977-SCT

*ALESA DAWN CRUM, INDIVIDUALLY, AND AS
MOTHER AND NEXT FRIEND OF HANNAH
BRADDOCK*

*v.*

*CITY OF CORINTH, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2013 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| TRIAL COURT ATTORNEYS: | TACEY CLARK LOCKE |
| | MITCHELL ORVIS DRISKELL, III |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MATTHEW DANIEL WILSON |
| | TACEY CLARK LOCKE |
| ATTORNEY FOR APPELLEE: | MITCHELL ORVIS DRISKELL, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 01/14/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. Alesa Dawn Crum's home in Corinth, Mississippi, was flooded with backflowed

sewage twice. Crum filed suit against the City of Corinth, alleging damages as a result of the

City's negligent maintenance of its sewage system. The Alcorn County Circuit Court granted

the City's motion to dismiss Crum's complaint, finding that the City was immune under the

discretionary-function exemption of the Mississippi Tort Claims Act (MTCA). Crum appeals,

arguing that the City is not entitled to discretionary-function immunity. Because we find that

the trial court erred in dismissing Crum's complaint, we reverse the judgment and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Around March 30, 2012, during heavy rains, the Corinth, Mississippi, home of Alesa Dawn Crum was flooded with approximately twelve inches of sewage over a period of about six hours. On April 23, 2012, Crum filed a complaint with the Mississippi Department of Environmental Quality (MDEQ) regarding the overflow. MDEQ investigator Lynne Burrell traveled to Crum's home in Corinth to investigate the incident on May 4, 2012. Burrell's investigation revealed that the overflow possibly had been caused by root growth in the manhole into which Crum's sewage service line emptied.

¶3. In the early morning of May 7, 2012, sewage overflowed a second time into Crum's home and garage. Burrell twice telephoned Billy Glover, the superintendent of the City's Sewer Department, and left voicemail messages. Burrell also sent an email message to the mayor of the City of Corinth with a photograph of the root mass in the manhole. On May 8, 2012, Glover returned Burrell's telephone calls and informed her that it was likely that an employee of the City's Street Department had dislodged a manhole cover while bush hogging roadside ditch banks in the area. Glover informed Burrell that the City had removed the root mass from the manhole, and that he would investigate whether the City would pay for sewage cleanup at Crum's home. Glover also informed Burrell that he would resubmit the cleanup bill to MS Municipal Insurance.

2

¶4.     Burrell and Glover spoke again on May 25, 2012, and Glover confirmed his suspicion that recent road work by the City had "knock[ed] off the ring and manhole cover." Glover indicated that, during heavy rains, due to the uncovered manhole, an enormous amount of rainwater had entered the sewer lines near Crum's house, causing sewage to back up into the lines and into Crum's house. Based on her conversation with Glover, Burrell reported that "[t]he city is going to fix [Crum's] home." On May 29, 2012, Burrell reported that she had received a letter from Glover to MS Municipal Insurance, dated May 11, 2012, and that his report to the insurer was consistent with what Glover had told her on May 25, 2012.

¶5.     Crum filed her complaint against the City in the Circuit Court of Alcorn County on October 3, 2012. She alleged that the City had a "duty to maintain the sewer system in such a way that [Crum's] home is not flooded by the sewer system," and that the City had breached its duty by failing to maintain the sewer system properly. Crum claimed that her home was irreparably damaged as a result of the City's negligence and that she and her daughter had suffered physical illness due to the sewage overflow.

¶6.     On November 2, 2012, the City filed a Rule 12(b)(6) motion to dismiss Crum's complaint. *See* M.R.C.P. 12(b)(6). The City claimed discretionary-function immunity: "[a]s it is well settled that the operation and maintenance of a municipal sewage system is a discretionary function and deals with the provision of adequate governmental services, the City is immune . . . ." *See **Fortenberry v. City of Jackson***, 71 So. 3d 1196 (Miss. 2011). Crum responded on March 26, 2013, that the City was not entitled to immunity because

3

federal and state regulations rendered the City's duty to maintain its sewage system ministerial.

¶7.     A hearing was held on the City's motion to dismiss on September 16, 2013. On October 15, 2013, the trial court granted the City's Rule 12(b)(6) motion and dismissed Crum's claims with prejudice, reasoning that the City was immune from suit because Crum's claim was based on the City's maintenance of its sewer system, which the trial court had determined was a discretionary function under the MTCA. Aggrieved, Crum appealed that dismissal to this Court.

¶8.     On appeal, Crum argued again that federal and state regulations imposed "a statutory and a regulatory duty to maintain the City's sewer system, and, when necessary, to repair any defective portion thereof." Alternatively, Crum argued that the manhole cover's exposure was caused, not by the exercise of a discretionary function of the City, but by the simple negligence of the bush hog operator: "the Bush Hog operator exercised no social, economic, or political policy analysis when he was cutting the grass in the ditch bank." *See Fortenberry*, 71 So. 3d at 1199 (The public-policy function test requires the Court to "answer two questions: 1) did the conduct or activity involve an element of choice or judgment; and if so, 2) did that choice or judgment involve social, economic, or political policy?").

¶9.     After briefing in this case had been completed, this Court, on December 29, 2014, handed down its decision in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014). In *Brantley*, we announced our abandonment of the public-policy function test. *Id.* (citing

*Little v. Miss. Dep't of Transp.*, 129 So. 3d 132 (Miss. 2013)). We clarified the standard for judicial determination of whether a governmental entity is entitled to immunity:

> [A] plaintiff may defeat sovereign immunity, even when a governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.

*Brantley*, 152 So. 3d at 1115. In *Brantley*'s wake, the City sought leave to file a supplemental brief "to show why the Trial Court's decision should be affirmed under" the new test. This Court granted the City's motion and ordered supplemental briefing.

**STANDARD OF REVIEW**

¶10. "A motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law, which is reviewed under a de novo standard." *Rose v. Tullos*, 994 So. 2d 734, 737 (Miss. 2008) (citing *Cook v. Brown*, 909 So. 2d 1075, 1077-78 (Miss. 2005)). A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *Little*, 129 So. 3d at 135 (quoting *Little v. Miss. Dep't of Human Servs.*, 835 So. 2d 9, 10-11 (Miss. 2002)). "'[I]n order to grant a Rule 12(b)(6) motion to dismiss, there must appear to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim.'" *Little*, 129 So. 3d at 135 (quoting *Little*, 835 So. 2d at 11). When considering a Rule 12(b)(6) motion, "[t]he allegations in the complaint must be taken as true." *Rose*, 994 So. 2d at 737 (citing *Ralph Walker, Inc. v. Gallagher*, 926 So. 2d 890, 893 (Miss. 2006)).

## DISCUSSION

¶11.    Mississippi Rule of Civil Procedure 12(b)(6) allows dismissal when a plaintiff has failed "to state a claim upon which relief can be granted." M.R.C.P. 12(b)(6). For the movant to prevail on a Rule 12(b)(6) motion, "'there must appear to a *certainty* that the plaintiff is entitled to no relief *under any set of facts* that could be proved in support of the claim.'" *Little*, 129 So. 3d at 135 (quoting *Little*, 835 So. 2d at 11) (emphasis added). Crum sued the City of Corinth, alleging that it had failed to maintain the sewer line and manhole cover, and that its failure had caused sewage to invade her home. The City moved to dismiss under Rule 12(b)(6), claiming discretionary-function immunity. Crum responded that state and federal statutes and regulations impose a ministerial duty on the City to maintain its sewer system. The issue before the Court, therefore, is whether there is any set of facts under which Crum could prevail.

¶12.    Mississippi Administrative Code Section 11-6-1.1.4(A)(18) imposes a ministerial duty on permitted sewage system operators to properly "operate, maintain, and when necessary, promptly replace all facilities and systems of collection, treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of [the] permit." *See **Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1113 (Miss. 2015). Taking as true Crum's allegation that "[t]he backflow of sewage into [her] home was due to the fault of [the City in] not properly maintaining the sewer system and/or its manholes and/or the City of Corinth causing the sewer system and/or manholes to flood

6

by action of the City of Corinth and/or its employees," it cannot be said to a certainty that Crum would not prevail under any set of facts that could be proved in support of her claim.

¶13.    Under this Court's standard for Rule 12(b)(6) dismissal, assuming that everything alleged in Crum's complaint was true, the City bore the burden to show that Crum would be entitled to no relief under any set of facts. *Little*, 129 So. 3d at 135 (quoting *Little*, 835 So. 2d at  11). It did not.  Therefore, Crum has stated an adequate claim, and the trial court erred in granting the City's motion to dismiss.

¶14.    But even if the dissent is correct that Crum failed to allege that the "duty was ministerial in nature, as would be required to defeat a claim of governmental immunity under the MTCA" and that Crum failed to prove, in her response to the City's motion to dismiss, "that her injury was caused by an act done in furtherance of some more narrow duty made ministerial by statute or regulation," Crum ought to  be given the opportunity to redraft her pleadings in accordance with this Court's recent decisions in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014), and *Boroujerdi v. City of Starkville*, 158 So. 3d 1106 (Miss. 2015). Diss. Op. ¶32 (emphasis added).

¶15.    In *Brantley*, the trial court granted summary judgment to the City. *Brantley*, 152 So. 3d at 1108. This Court reversed the judgment and remanded the case to the Circuit Court of DeSoto County, holding the following:

> Because this Court has injected the aspect of discretionary-function immunity into the proceedings, the plaintiff has had no opportunity to tailor his discovery or strategy to address the possibility of a rule, regulation, or statute which may render the duty of removing a person from an ambulance a ministerial one, and thus could remove such duty from the umbrella of discretionary-function immunity. On remand, if the plaintiff can prove that the defendant was

7

fulfilling a function or duty mandated by a specific statute, ordinance, or regulation promulgated pursuant to lawful authority, then he may proceed with his claim.

*Id.* at 1118.

¶16.   In *Boroujerdi*, the trial court had "granted summary judgment for the City, finding that maintenance of the sewage system is a discretionary function and that the City is immune from suit pursuant to Mississippi Code Section 11-46-9(1)(d) and this Court's plurality opinion in *Fortenberry v. City of Jackson*, 71 So. 3d 1196 (Miss. 2011)."[1] *Boroujerdi*, 158 So. 3d at 1108. This Court reversed the judgment and remanded the case to the Circuit Court of Oktibbeha County, finding "that it would be patently unfair to affirm summary judgment in the City's favor without Boroujerdi's having an opportunity to attempt to conform his complaint and proof to this Court's current approach to discretionary function immunity." *Id.* at 1114.

¶17.   At the time Crum filed her complaint and at the time she responded to the City's motion to dismiss, neither *Brantley* nor *Boroujerdi* had been decided by this Court. Crum filed her complaint on October 23, 2012. Her response to the City's motion to dismiss was filed on March 26, 2013. The trial court entered its order granting the City's Rule 12(b)(6) Motion to Dismiss on October 23, 2013. Crum filed her notice of appeal on November 14, 2013. This Court's mandate in *Brantley* issued on December 29, 2014; our mandate in *Boroujerdi* issued on March 5, 2015.

---

[1] *Fortenberry* "specifically held that a municipality is immune from suit for negligent maintenance of its sewage system under Section 11-46-9(1)(d) because maintaining such a system is a discretionary function of the municipality." *Boroujerdi*, 158 So. 3d at 1109.

¶18. Although this Court ordered, and the parties filed, supplemental briefing in this case to address the applicability of *Brantley*, Crum has not been provided the opportunity in the trial court to attempt to "conform [her] complaint and proof to this Court's current approach to discretionary function immunity." *Boroujerdi*, 158 So. 3d at 1114. As the majority stated in *Boroujerdi*, depriving Crum of this opportunity would be "patently unfair." *Id.* Even if Crum's complaint does not adequately state a claim, the affirmance of the Rule 12(b)(6) dismissal in this case would be premature.

## CONCLUSION

¶19. Assuming that everything alleged in Crum's complaint was true, the City failed to show to a certainty that Crum would be entitled to no relief under any set of facts. Because Crum adequately has stated a claim, we hold that the trial court erroneously entered dismissal pursuant to Rule 12(b)(6). We therefore reverse and remand the case to the Alcorn County Circuit Court for proceedings consistent with this opinion.

¶20. **REVERSED AND REMANDED.**

**KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY PIERCE, J. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J. DICKINSON, P.J., AND MAXWELL, J., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶21. While the result reached by the plurality is correct, I maintain that the analysis first adopted by this Court in ***Jones v. Mississippi Department of Transportation***[2] simplifies the

---

[2]***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256 (Miss. 1999).

inquiry and would result in more predictive results for plaintiffs and defendants alike. I agree that the trial court erred in granting immunity under the discretionary-function exception of the Mississippi Tort Claims Act. The fact remains that an employee of the City's street department dislodged a manhole cover while mowing, which caused water to enter and flood Crum's house. I fail to see how mowing grass requires any governmental judgment or lends itself to the discretion of an employee. As an eight-year-old, I never would have imagined that to choose whether to mow around an object or to mow over an object (a ministerial decision) would later become the subject of debate in the highest court of any state.

¶22. Were we still using the public-policy function test—the test of immunity advanced by the United States Supreme Court more than two decades ago—the resolution of this case would be quite simple. I did not agree that **Brantley**'s[3] test was correct when we adopted it. **Brantley** convolutes the process by requiring both the plaintiff and the defendant to look outside the alleged negligent act to establish immunity or lack thereof. As such, I propose a return to the public-policy function test as adopted by this Court in **Jones**, 744 So. 2d at 260.

¶23. The discretionary-function exceptions of the Federal Tort Claims Act and the Mississippi Tort Claims Act are practically identical.[4] For determining the application of

---

[3]**Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014).

[4]*See* 28 U.S.C. § 2680(a) (granting immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"); Miss. Code Ann. § 11-46-9(d) (Rev. 2012) (granting immunity for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused").

10

discretionary-function immunity, the United States Supreme Court formulated the "public-policy function test." *See **United States v. Gaubert***, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). This Court adopted the same public-policy function test in our analysis of the MTCA's discretionary-function exception in ***Jones***, recognizing that the provision in the MTCA was patterned after the identical provision in the FTCA. The Legislature amended the MTCA after we adopted the public-policy function test in ***Jones*** and made no intimation that we had adopted an incorrect test or interpretation of the statute. *See **McDaniel v. Cochran***, 158 So. 3d 992, 1000 (Miss. 2014) ("The Legislature is assumed to be aware of judicial interpretations of its statutes, and . . . we must conclude that the legislative silence amounts to acquiescence.") (internal citations omitted). "[A]bsent legislative action, [our interpretations] become a part of the statute." ***Id.*** The Legislature's decision not to change the language of the MTCA should be honored, as should the ***Jones*** decision. ***Brantley*** inappropriately altered the legislatively endorsed test.

¶24.   For more than fifteen years, this Court applied the public-policy function test to determine whether the discretionary-function exception applied in a given case. Granted, that test was abrogated in ***Brantley***. I echo Chief Justice Waller's lament that its abrogation was both impractical and irrational:

> Based on the almost identical language of the MTCA and [the] FTCA, I believe there is a practical and rational basis for the Mississippi Supreme Court to interpret the MTCA's discretionary-function exception as the United States Supreme Court has done for its identically worded federal counterpart. Consistency and clarity should be the watchwords in analyzing this heavily litigated area of law.

*Brantley*, 152 So. 3d at 1119 (Waller, C.J., concurring in part and in result). I would rescind the *Brantley* analysis because it overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations—creating extra layers of proof, which may have little or no practical effect on the actual negligent act. I would therefore readopt the simpler and more direct public-policy function test. *See State ex rel. Moore v. Molpus*, 578 So. 2d 624, 635 (Miss. 1991) (explaining that cases may be overruled when their application is "impractical," "mischievous in effect," or "detriment[al] to the public").

¶25.    Employing the public-policy function test, we determine (1) whether the activity involved an element of choice or judgment, and if so, (2) whether that choice or judgment involved social, economic, or political policy. *Dancy v. East Miss. State Hosp.*, 944 So. 2d 10, 16 (Miss. 2006).

¶26.    Section 21-27-189(b) granted the City discretionary authority "[t]o construct, operate and maintain sewage systems . . . ." Miss. Code Ann. § 21-27-189(b) (Rev. 2015). However, once the City exercised that discretionary authority, it became incumbent on its employees to exercise concomitant duties in operation and maintenance—duties which are neither exclusively discretionary nor ministerial. *See Fortenberry v. City of Jackson* 71 So. 3d 1196, 1204-05 (Miss. 2011) (Randolph, J., dissenting). I maintain that "there is a vast difference between the statutorily supported discretion to [construct, operate, and maintain sewage systems] and the practical, mundane, day-to-day operation and maintenance actions which arise after the exercise of such discretion, to which the statute does not speak." *Id.* at 1204.

¶27. An employee of Corinth's Street Department dislodged a manhole cover while bush-hogging the ditch banks. These facts put this case squarely in line with *City of Jackson v. Internal Engine Parts Group, Inc.*, 903 So. 2d 60 (Miss. 2005). Engine Parts sustained flood damage when the city failed to inspect and maintain a drainage ditch. *Id.* at 64. This Court (erroneously) distinguished *Engine Parts* from *Fortenberry* because, unlike the operation and maintenance of a sewage system, the neglected maintenance of a drainage ditch is not made discretionary by statute. *Fortenberry*, 71 So. 3d at 1200-01. As in *Engine Parts*, the neglected bush-hogging of a ditch bank in this case is not made discretionary by statute.

¶28. I fail to see how the mower's choice involved social, economic, or political policy. His job was to cut the grass. Operating a tractor or bush-hog entails no budgetary considerations or resource allocations. Deciding to steer left or right, how high to cut, or what pattern to cut implicates no policy considerations. Operating a bush-hog in the scope of one's employment should be no more protected by discretionary-function immunity than if the operator had run over a child.

¶29. In sum, I would revive the public-policy function test. Applying the public-policy function test, the employee's dislodging a manhole cover while mowing did not implicate public-policy considerations. I would find the circuit court erred in granting summary judgment in favor of the City based on discretionary-function immunity.

**PIERCE, J., JOINS THIS OPINION IN PART.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

13

¶30. Because I believe that the City has met its burden of proving that Crum is not entitled to relief in this case, I respectfully dissent.

¶31. The plurality correctly recites this Court's well-established standard of review for a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6). However, the plurality fails to point out this Court's recent pronouncement that, to defeat a claim of immunity under the Mississippi Tort Claims Act, *the plaintiff* must prove that the governmental act in question "furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.'" **Brantley v. City of Horn Lake**, 152 So. 3d 1106, 1115 (Miss. 2014). I would find that the City presented sufficient evidence in its motion to dismiss that no set of facts would entitle Crum to relief, as she has cited no statute or regulation creating a ministerial duty that is implicated in this case.

¶32. In her complaint, Crum alleged that the City "has a duty to maintain the sewer system in such a way that Plaintiff's home is not flooded by the sewer system." Notably, Crum did not allege that the above duty was ministerial in nature, as would be required to defeat a claim of governmental immunity under the MTCA, nor did she even mention the MTCA in her complaint. Nevertheless, this Court has held that the general duty of sewer-system maintenance is discretionary in nature. *See* **Boroujerdi v. City of Starkville**, 158 So. 3d 1106, 1112 (Miss. 2015). Thus, in response to the City's motion to dismiss based on the MTCA, Crum bore the burden of proving that her injury was caused by an act done in furtherance of some more narrow duty made ministerial by statute or regulation. She has failed to do so.

14

¶33. In her response to the City's motion to dismiss, Crum first couched her claim as one for negligent road maintenance, claiming that the City was not entitled to discretionary-function immunity because "[t]he city employee's act of knocking the lid and ring of the sewer manhole off was not a discretionary act." Essentially, she argued that "[t]here could hardly be a less ministerial job than a street employee bushogging [sic] ditches." This argument clearly is without merit. This Court has held that the Mississippi Department of Transportation has a ministerial duty, specifically created by statute, to maintain and repair state highways. *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (Miss. 2013). But no concomitant duty exists for municipalities with respect to municipal roadways. On the contrary, "the governing authorities of municipalities shall have the power to exercise full jurisdiction in the matter of streets, sidewalks, sewers and parks, to open and lay out and construct the same; and to repair, maintain, pave, sprinkle, adorn, and light the same." Miss. Code Ann. § 21-37-3(1) (Rev. 2015). Crum fails to cite a statute that creates a ministerial duty of maintenance or repair for municipal roads similar to the statute cited in *Little*. Therefore, under *Brantley*, the City is immune from Crum's claim that her injury was caused by negligent road maintenance. *See Brantley*, 152 So. 3d at 1116 (finding that the function of providing ambulance services is discretionary, because no statute requires a governmental entity to perform that function).

¶34. Next, Crum argued that the MTCA did not provide the City with immunity because the failure to properly maintain the sewer manhole in question violated federal law. This argument also is flawed. First, the federal regulations on which Crum relies were

15

promulgated pursuant to the Federal Water Pollution Prevention Act, which applies only to "navigable waters," which does not include the groundwater that Crum now speculates was polluted by the discharge in this case. 33 U.S.C. §§ 1311(a), 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2. *See Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962 (7th Cir. 1994) (affirming dismissal of claim based on alleged violation of the Federal Act, where alleged discharge occurred in groundwater, rather than navigable water). Moreover, the Federal Act does not create any general day-to-day operational duties, but leaves this regulatory authority to the states. *See District of Columbia v. Schramm*, 631 F.2d 854, 860 (D.C. Cir. 1980).

¶35. In addition, the state regulations on which Crum relies do not create a ministerial duty that is applicable to the instant case. Crum attached twenty pages of Mississippi Department of Environmental Quality permitting regulations to her response to the City's motion to dismiss, but she did not explain how any of these regulations applied to her case. On appeal, Crum now relies on MDEQ regulations promulgated under the Mississippi Air and Water Pollution Control Law ("the State Law"), which require sewage-control operators at all times to "properly operate, maintain, and when necessary, promptly replace all facilities and systems of collection (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of the permit." Miss. Admin. Code § 11-6-1.1.4(A)(18). Crum does not explain how the City's alleged act of damaging a manhole cover equates to a violation of these statutes and regulations. Instead, she simply argues that these statutes and regulations create a continuous ministerial duty of maintenance, which

16

negates the protections of the MTCA. Crum makes no allegation that the discharge in question affected any of the state's waters or otherwise violated applicable water-quality standards. Simply put, under **Brantley**, the City's duty under the State Law to prevent unnecessary water pollution is not "at issue" in this case. **Brantley**, 152 So. 3d at 1115 ("The Court must then examine any narrower duty associated with the activity *at issue* to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one[.]"). Because the State Law is inapplicable to this case, so are the regulations promulgated thereunder.

¶36. Finally, Crum supported her response to the City's motion to dismiss with the MDEQ's Wastewater Treatment Facilities Operations and Training Manual, 5th edition. She argued that provisions of this manual created a ministerial duty of inspection and maintenance. But the training manual in question specifically provides that it was not intended to create any legal duties or requirements. Rather, the training manual simply provides guidance and instruction on best practices for sewage-facility operators. Thus, the City's alleged noncompliance with this manual cannot serve as the basis of Crum's claim. *See, e.g.,* **Chisolm v. Miss. Dep't of Transp.**, 942 So. 2d 136, 143 (Miss. 2006) (holding that the provisions of the Manual on Uniform Traffic Control Devices are advisory in nature and cannot be used to create a legal obligation).

¶37. After a review of Crum's complaint, the City's motion to dismiss, and Crum's response to the motion, I believe that Crum failed to defeat the City's defense of immunity by presenting the trial court with a relevant statute or regulation creating a ministerial duty

17

in this case. The plurality posits, as an alternative disposition, that this case should be remanded to the trial court to allow Crum to conform her complaint to this Court's holding in *Brantley*, which was not decided until after Crum had perfected her appeal. But this Court already has given the parties the opportunity to address the impact of *Brantley* on the trial court's dismissal in this case. In her response to the City's request for supplemental briefing, Crum argued that "her Appellant's Brief sufficiently anticipates the holding in *Brantley*, making further briefing in view thereof unnecessary." And in her supplemental brief, Crum claimed that "no matter how *Brantley* is viewed – be it from the perspective of the majority opinion or from that of the dissent – the *Brantley* opinion strongly supports Ms. Crum's contention that the City of Corinth lacks sovereign immunity in this matter." Thus, the parties agree that Crum's claims are squarely before this Court, and that further analysis of *Brantley* in the trial court is unnecessary.

¶38. Because the City met its burden of proving that there is no set of fact which would afford Crum relief in this case, I would affirm the trial court's dismissal of Crum's complaint.

**PIERCE, J., JOINS THIS OPINION.**