RANDOLPH, Presiding justice,
dissenting:
¶ 41. In 2014, by a five-four decision, this Court abrogated fifteen years of precedent regarding discretionary-function immunity under the Mississippi Tort Claims Act (MTCA),[24] a decision Chief Justice Waller later described as “a careless measure that will likely create chaos for the trial bench and bar, which have a right to expect consistency from this Court.” Boroujerdi v. City of Starkville, 158 So.3d 1106, 1116 (Miss.2015) (Waller, C.J., dissenting).
¶ 42. While the majority describes Brantley as “settled law,”[25] Brantley is considered by many to be “settled” only within the confines of the walls surrounding the Mississippi Supreme Court. For the lawyers and judges working in the proverbial trenches, the law regarding discretionary immunity is barely short of chaotic. Brantley jettisoned what once was a workable solution. The Court has rejected multiple opportunities to return to the original analysis,[26] instead offering opinions bereft of standardization, Plaintiffs and defendants, along with the trial bench and bar, deserve predictability in the application of our law. Following Brantley and its progeny, only a few attorneys are capable of evaluating claims and/or defenses related to discretionary immunity. Brantley and its progeny leave our trial judges to randomly guess how their discretionary-immunity judgments will be evaluated on appeal. The sovereign State and its subdivisions are left, in many situations, unable to know, before engaging in cértain conduct, whether their conduct is protected by immunity. Injured parties are left with uncertainty as to whether they may claim money damages, or whether the governmental entity is exempt from liability. Nee Miss.Code Ann. §§ 11-46-5(1), 11-46-9(l)(d) (Rev.2012). These developments dictate a return to the public-policy function test[27] that preceded Brantley. The very reason we apply stare decisis is “so that trial courts can make correct decisions and lawyers can properly advise their clients.” United Servs. Auto Ass’n v. Stewart, 919 So.2d 24, 30 (Miss.2005). And when attorneys are left unable to advise their' clients on the applicability of *1072 discretionary-function immunity in the wake of Brantley, the whole argument for upholding “the new test” based on stare decisis is undermined.
¶ 43, It was the majority in Brantley that disregarded stare decisis. See Borou-jerdi, 158 So.3d at 1115 (Waller, C.J., dissenting). The proponents of the Brantley test have yet to justify why such a break with precedent was warranted or necessary, notwithstanding Chief Justice Waller’s arguments to the contrary.
[E]ven where this Court determines a prior interpretation of a statute to be incorrect, “we will nevertheless continue to apply' the previous interpretation, pursuant to the doctrine of stare decisis, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation.” Caves v. Yarbrough, 991 So.2d 142, 154 (Miss. 2008) (holding that stare decisis required adherence to a judicially created discovery rule under the MTCA, where the Legislature had reenacted the statute in question without countermanding this Court’s prior interpretations).
A thorough review of the majority opinion reveals no mention of the Legislature’s reenactment of Section 11-46-9 eight years after this Court’s holding in Jones, which serves as evidence of the Legislature’s approval and incorporation of the public-policy function test into the statute. See Caves, 991 So.2d at 154. The majority does not explain how our established rule for analyzing discretionary-function immunity is erroneous as an initial matter. And even assuming arguendo that our prior interpretation of the law has been incorrect, the majority fails to point out how our continued adherence to precedent is in .any way impractical, pernicious, mischievous in effect, or detrimental to the public. On the contrary, I view our adoption of the public-policy function test as a well-reasoned decision that should not be abandoned simply because some members of this Court do not agree on its intricacies.
Boroujerdi, 158 So.3d at 1115-16 (Waller, C.J., dissenting).
¶ 44. In applying the Brantley test, the majority looks to the “broadest function involved in order to make a baseline determination” and then examines “any narrower duty” to determine whether a governmental entity enjoys discretionary-function immunity. See Maj. Op. at ¶ 12 (citing Brantley, 152 So.3d at 1114-15). But the statute does not speak to “broad functions,” “baseline determinations,” or “narrow duties.” See Miss.Code Ann. § 11-46-9(l)(d) (granting immunity for any claim “[biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused”). Brantley and its progeny grafted those terms into the statute— without definition or guidance in their application. The result is an amalgamation of various interpretations, from a multitude of justices on this Court and judges on the Court of Appeals, lacking a modicum of consistency and predictability.
¶ 45. Discretionary immunity is one of the most misunderstood and oft-criticized areas of law in our state. The need to return to the public-policy function test is self-evident. We should accept Crider’s invitation to do so. “Employing the public-policy function test, we determine (1) whether the activity involved an element of choice or judgment, and if so, (2) whether that choice or judgment involved social, economic, or political policy.” Crum, 183 So.3d at 854 (Randolph, P.J., concurring in result only) (citing Dancy v. E. Miss. State Hosp., 944 So.2d 10, 16 (Miss.2006)).
*1073 ¶46. Crider alleges the Bureau failed to properly inspect and maintain a grassy area on its grounds, and as a result, she was injured when she stepped into a hole obscured by overgrowth, fell, and broke her ankle. I still “fail to see how mowing grass requires any governmental judgment or lends itself to the discretion of an employee.” Id. at 853. While the decision whether to construct and operate a visitors bureau may be discretionary,
once the [county] exercised that discretionary authority, it became incumbent on its employees to exercise concomitant duties in operation and maintenance— duties which are neither exclusively discretionary nor ministerial. I maintain that “there is a vast difference between the statutorily supported discretion to [construct, operate, and maintain a building] and the practical, mundane, day-to-day operation and maintenance actions which arise after the exercise of such discretion, to which the statute does not speak.”
Id. at 854 (citing Fortenberry v. City of Jackson, 71 So.3d 1196, 1204-05 (Miss. 2011) (Randolph, J., dissenting)).
¶47. Moreover, I fail to see how the lawn-mower operator’s choice involved social, economic, or political policy. His job was to cut the grass and inspect the grounds. Operating a lawn mower entails no budgetary considerations or resource allocations. Deciding to steer left or right, how high to cut, or what pattern to cut implicates no policy considerations. Cri-der alleges a simple act of negligence which is not protected by discretionaiy-function immunity.
¶ 48. In sum, I would revive the public-policy function test. Applying the public-policy function test, the Bureau’s alleged failure to inspect and maintain its grounds did not implicate public-policy considerations. I would find the circuit court erred in granting summary judgment in favor of the Bureau based on discretionary-function immunity.
WALLER, C.J., JOINS THIS OPINION. MAXWELL AND BEAM, JJ., JOIN THIS OPINION IN PART.

. See Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014).

. See Maj. Op. at ¶ 10.

. See Crum v. City of Corinth, 183 So.3d 847, 853-55. (Miss.2016) (Randolph, P.J., concurring in result only); Boroujerdi, 158 So.3d at 1115-17 (Waller, C.J., dissenting); Brantley, 152 So.3d at 1118-23 (Waller, C.J., concurring in part and in result).

.For determining the application of discretionary-function immunity, ‘the United States Supreme Court formulated the "public-policy function test.” See United States v. Gaubert, 499 U.S. 315, 322-23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). This Court adopted the same public-policy function test in Jones v. Miss. Dep. of Transp., 744 So,2d 256 (Miss. 1999).