# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-IA-01419-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION AND MISSISSIPPI DEPARTMENT OF TRANSPORTATION*

*v.*

*CHRISTOPHER D. ADAMS, DECEASED, BY AND THROUGH DOMINIQUE D. ADAMS, INDIVIDUALLY AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF CHRISTOPHER D. ADAMS, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2014 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | PAUL T. BENTON |
| | PATRICIA BEALE |
| | STEPHEN G. PERESICH |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | STEPHEN G. PERESICH |
| | JOHANNA M. McMULLAN |
| | MARY W. VAN SLYKE |
| ATTORNEYS FOR APPELLEE: | PATRICIA L. BEALE |
| | PAUL T. BENTON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED AND REMANDED - 06/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     This is an interlocutory appeal. The Mississippi Transportation Commission ("MTC")

and the Mississippi Department of Transportation ("MDOT") (collectively, the "defendants")

filed a motion for summary judgment in the Jackson County Circuit Court and argued that

they were immune from liability under the Mississippi Tort Claims Act ("MTCA"). The trial judge denied their motion because the plaintiff had alleged—and provided evidence—that they had violated specific regulations.[1] The trial judge rejected the defendants' argument that, notwithstanding certain narrower regulations requiring specific actions, they were immune from liability because the broader function of traffic-control-device placement is discretionary. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Christopher Adams died from injuries he sustained when his motorcycle wrecked on Interstate 10 in Jackson County. After traveling north on Interstate 110 in Harrison County, Adams merged onto an eastbound lane of I-10, where he entered a construction zone. According to the complaint, Adams inadvertently drove into a closed lane and then, when he tried to navigate back into an open lane, his motorcycle hit an uneven surface between lanes and "rotated." Adams was thrown from his motorcycle and into traffic, where two other vehicles hit him, causing injuries from which he later died.

¶3. Adams's spouse, Dominique, filed suit against the defendants[2] and alleged eight causes of action:

> 1.     Failing to comply with the Mississippi Standard Specifications for Road and Bridge Construction;

---

[1] The trial judge made this ruling without the benefit of this Court's decision in **Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014). But as will be shown below, the trial judge properly applied **Brantley**.

[2] Adams also named as a defendant the primary contractor for the road construction project, Mallette Brothers Construction Company, Inc. But it is not a party to this appeal.

2.	Failing to comply with the Manual on Uniform Traffic Control Devices;

3.	Failing to place proper warnings in advance of the lane closures;

4.	Failing to place proper warnings in advance of the uneven pavement;

5.	Failing to act with ordinary and reasonable care under the circumstances of the subject construction zone;

6.	Creating and allowing a known and unreasonably dangerous and hazardous condition to exist in the subject construction zone in reckless disregard for the safety of citizens traveling through the subject construction zone;

7.	Failing to erect and/or maintain warning signs to alert travelers along the subject construction zone to the fact that dangerous conditions existed as a result of said construction being performed; and

8.	Further negligent acts or omissions to be shown a[t] trial.

¶4.	The defendants answered Adams's complaint and denied all claims. Soon thereafter, the defendants filed two motions; a motion to dismiss or for summary judgment based on MTCA immunity and a motion asking the trial judge to hold their summary-judgment motion in abeyance and to enter a scheduling order for discovery on its immunity defenses. The trial judge ultimately entered an agreed scheduling order setting various deadlines for discovery on the defendants' immunity-related defenses.

*Moody's Affidavit*

¶5.	During the discovery period, the defendants designated two experts, Dean Moody and Gary McCollom, both of whom were also MDOT employees. Moody, the project engineer for the I-10 expansion where the accident occurred, submitted an affidavit. He stated that "MDOT employees monitored compliance with the Temporary Traffic Control Plan routinely

3

and frequently throughout the duration of the Construction project."[3] Moody also stated that "Mallette Brothers was in compliance with the Construction Plans and the Temporary Traffic Control Plan during the entire course of the Construction Project." Moody's affidavit continued:

> The MDOT had and has no knowledge of any noncompliance by Mallette Brothers relating to the Temporary Traffic Control Plan for the Construction Project and site. During Phase 4 of the Project and before the accident which is the subject of the claims against the MDOT, I examined the traffic control devices set out by Mallette Brothers and found that the traffic control devices complied with the Temporary Traffic Control Plan. The Temporary Traffic Control Plan for Phase 4 of the Project also did not require additional pavement markings other than those specified in the Temporary Traffic Control Plan.

### Tekell's Affidavits

¶6.     Adams designated V.O. "Dean" Tekell Jr. as an expert. Tekell submitted two affidavits. In the first affidavit, he opined—based on his review of the "pleadings, documents and photographs of the parties"—that the defendants "ha[d] a duty to maintain, repair and inspect state-maintained highways," and that the defendants "breached this duty by failing to regularly inspect the area where the subject incident occurred."

¶7.     According to Tekell, the defendants "knew or should have known of the absence of a solid white traffic stripe in the area of the subject incident and that the plastic drums were placed too far from the edge of the travel lane." Tekell also stated that "[b]y failing to place a solid white traffic stripe and by failing to place the drums in conformance with their details, they breached this duty." Tekell stated further that the defendants had a duty to designate a

---

[3]We explain the various rules and regulations cited by the experts later in this opinion.

4

responsible person to monitor Mallette Brothers' compliance with the project's Construction Plan and Traffic Control Plan pursuant to Section 618.01.2 of the Red Book, and that they had failed to monitor for at least five days prior to the incident. According to Tekell, the defendants "knew or should have known of Mallette Brothers' non-compliance with the Traffic Control Plan," and they "failed to require Mallette Brothers to place a solid white traffic strip in the area of the subject incident and failed to require the placement of drums in conformance with the traffic control detail."

¶8. Tekell submitted a supplemental affidavit and opined that the defendants also had violated Red Book Section 618.03.3 (mandating that lane lines and edge lines that have been covered or removed during the day's operations be replaced before work is discontinued for the day or soon thereafter):

> Based on the deposition testimony of Frank Mallette . . . and the photographs produced by the parties, Mallette Brothers did not place any striping or edge lines in the area where the subject incident occurred.

Tekell further opined, "[i]n fact the contractor and MDOT permitted an edge line from a prior phase to remain in conflict with their barrels," which is a violation of Red Book Section 619.03.2 and a breach of their duties.

### *Motion Hearing*

¶9. After the immunity-defense discovery period, the defendants filed their supplemental motion to dismiss or for summary judgment. At the hearing on the motion, the defendants argued primarily that they enjoyed discretionary-function immunity for anything related to traffic-control devices. They argued further that this discretion conferred immunity even if

5

there were other specific statutes and regulations that addressed traffic-control-device placement. Adams countered that, while Mississippi Code Section 63-3-303 did indeed give the defendants discretion regarding the overall function of placing and maintaining traffic-control devices, certain other statutes and Red Book sections rendered some narrower duties associated with traffic-control devices ministerial. *See* Miss. Code Ann. § 63-3-303 (Rev. 2013).

¶10. After a recess, the trial judge denied the defendants' motion from the bench:

> MDOT is not a constitutional creature, but is a creature of the Legislature. By empowering it to come into existence, it allowed it to promulgate and use certain standards, which . . . have been in place for decades, perhaps at the inception of MDOT. . . . And in that case, those standards take on an entirely different role, and that role is statutory, it's legal, it is what binds MDOT to do its job.

This Court granted the defendants' petition for interlocutory appeal, and they now raise several issues on appeal, which we restate as:

1. **Adams's claims that MDOT failed to use proper traffic-control devices are barred by the MTCA, specifically Sections 11-46-9(1)(d) and 11-46-9(1)(p):**

2. **Mississippi Code Sections 65-1-65 and 65-1-67 "do not apply" to Adams's claims:**

3. **The trial judge erred when he ruled "essentially" that Red Book provisions "supercede" Mississippi Code Section 63-3-303:**

4. **Adams failed to demonstrate a causal connection between the defendants' alleged negligence and the motorcycle accident.**

We have consolidated and rearranged some of the issues in our discussion for clarity.

## STANDARD OF REVIEW

¶11. Trial courts should grant motions for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). Immunity under the MTCA "is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation." *Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1109 (Miss. 2014) (quoting *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (Miss. 2003)). This Court reviews *de novo* the application of the MTCA and grants or denials of summary-judgment motions. *City of Magee v. Jones*, 161 So. 3d 1047, 1049 (Miss. 2015) (citing *Lee v. Mem'l Hosp. at Gulfport*, 999 So. 2d 1263, 1266 (Miss. 2008); *Johnson v. Pace*, 122 So. 3d 66, 68 (Miss. 2013)).

## ANALYSIS

¶12. The crux of this appeal is whether the defendants' placement and maintenance of traffic-control devices was discretionary, so as to afford them immunity from Adams's suit. The defendants argue that, by denying summary judgment, the trial court in essence decided that the specific regulations cited by Adams "superseded" the discretion the Legislature had afforded them in Section 63-3-303. Adams posits that this Court has addressed this scenario in *Brantley* and in several subsequent opinions, holding that "certain narrower functions and duties" involved with a discretionary function "may be rendered ministerial through

7

applicable statutes, regulations, and/or ordinances." ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1108 (Miss. 2015). We agree with Adams for the reasons discussed below.

**1. The defendants do not enjoy discretionary-function immunity because Adams has produced evidence that they breached ministerial duties.**

¶13. Mississippi Code Section 11-46-9(1)(d) provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> > Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]

Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012). There is no dispute that the defendants are governmental entities and that the provisions of the MTCA—including its immunity provisions—control here. Again, the defendants argue that they have discretionary-function immunity, as provided in Section 11-46-9(1)(d), "because all of Adams's claims [are] predicated on the use and placement of traffic control devices." The defendants rely on Section 63-3-303, which provides, in pertinent part:

> The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways as it shall deem necessary to indicate and to carry out the provision of this chapter or to regulate, warn, or guide traffic.

Miss. Code Ann. § 63-3-303.[4] Based on this language, the defendants argue that "placement and maintenance of traffic control devices are discretionary functions and duties" that the

---

[4] The length of I-10 located in Mississippi is a designated state highway. Miss. Code Ann. § 65-3-3 (Rev. 2013).

Legislature has excepted from the defendants's "ministerial duty to equip the state's highways with traffic control devices . . . ."

¶14.    Adams does not disagree with this assertion but argues that within the overarching discretionary function prescribed by Section 63-3-303 exist certain narrower duties made ministerial by specific regulations and statutes.  In *Brantley*, this Court explained that

> while one statute may render a broad function ministerial, another statute or regulation may render a duty involved with that function discretionary, thus allowing the performance of such a duty to enjoy immunity. And clearly, the converse must be true, *such that narrower duties encompassed in a broad discretionary function may be rendered ministerial through statute or regulation*.

*Brantley*, 152 So. 3d at 1113 (emphasis added).  And in *Boroujerdi*, a case involving a sewage backup in a home, this Court said "while the overall function of maintaining a sewage system may be discretionary, certain narrower functions and duties involved with [a discretionary function] may be rendered ministerial through applicable statutes, regulations, and/or ordinances."  *Boroujerdi*, 158 So. 3d at 1108.

### Red Book Sections

¶15.    The regulations at the core of Adams's claims are various sections of the *Mississippi Standard Specifications for Road and Bridge Construction* (the "Red Book").  The Red Book covers all areas of road construction from the bid process to traffic control in construction and reconstruction zones.[5]   MTC has adopted it and ordered that it govern "all road and bridge construction except as may be designated otherwise in the contract documents for

---

[5]http://mdot.ms.gov/documents/lpa/MS%202004%20Standard%20Specifications.pdf (last visited May 31, 2016).

work already advertised or under construction." Here, MTC expressly incorporated the Red Book into the proposal and contract documents.

¶16. As detailed above, Adams produced evidence that the defendants had violated ministerial duties established by the Red Book. First, Adams presented evidence that the defendants had violated a portion of Section 618.03.3, which provides:

> All centerline, lane lines, edge lines and no-passing stripes that have been covered or removed during the day's operations *shall* be replaced with temporary stripe before work is discontinued for the day or as soon as weather conditions will permit . . . .

(Emphasis added.) Tekell stated in his supplemental affidavit that "Mallette Brothers did not place any striping or edge lines in the area where the subject incident occurred." And according to the complaint, the lane in which Adams was traveling started to taper to the left, but there was no edge marking showing the lane movement. As a result, he found himself traveling in a lane that was closed to traffic. And when he attempted to change lanes into the open lane, he hit the uneven longitudinal edge and was thrown from his motorcycle.

¶17. Adams also produced evidence that the defendants had violated a portion of Section 619.03.2, which mandates that "[e]xisting pavement markings conflicting with temporary markings shall be removed." Specifically, Adams alleged—and the defendants do not dispute—that the existing pavement marking "continues through the shoulder and goes off into the woods." And Tekell stated in his supplemental affidavit that the defendants "permitted an edge line from a prior phase to remain in conflict with their barrels."

¶18. Adams further produced evidence that the defendants had violated a portion of Section 618.01.2, which mandates that they shall designate a "responsible person" to monitor the

10

contractor's compliance with the Plan. Tekell stated in his initial affidavit that the defendants had failed to monitor Mallette Brothers' compliance with the Plan for at least five days prior to the incident, and that they "knew or should have known" of Mallette Brothers' "non-compliance."

¶19. Based on our holdings in **Brantley** and **Boroujerdi** and in light of the evidence detailed above, we find that the trial judge did not err when he found that the defendants were not entitled to discretionary-function immunity.[6] Stated differently, we find that the function here presents "the converse" principle that **Brantley** discussed: placement and maintenance of traffic-control devices is discretionary, *unless* narrower duties encompassed in that function—such as placing and maintaining edge lines—have been "rendered . . . ministerial through statute or regulation." **Id.** at 1113.

¶20. The defendants argue strenuously that this Court's decision in **Alabama Great Southern Railroad v. Jobes** "leaves no doubt that claims advanced on the use and placement of traffic-control devices are cloaked with immunity." There, this Court found that "[Section 63-3-303] allows MDOT, in its discretion, to determine the appropriate type, number, and location of traffic-control devices, making it immune from liability for this claim under Section 11–46–9(1)(d)." **Alabama Great Southern R.R. v. Jobes**, 156 So. 3d 871, 882 (Miss. 2015). But we made that finding only after noting specifically that Jobes had failed to allege any narrower duty, or to present any evidence to support her allegations:

---

[6]We note that the defendants failed to analyze or even cite either of these opinions in their initial brief before this Court.

11

> While Jobes does generally allude to some of MDOT's standard operating procedures related to potholes, warning sign placement, and pavement edging in her Response to MDOT's Motion, she has presented absolutely no *evidence* regarding MDOT's exact duties, or whether those duties were breached.

*Id.* at 880. But as shown above, Adams has presented evidence here through expert affidavits. So we reject the defendants' argument that *Jobes* controls.

¶21. In sum, we affirm the trial judge's denial of summary judgment because Adams produced evidence that the defendants had breached certain specific ministerial duties imposed by their own duly adopted regulations. We reject the defendants' argument that, because there is a statute rendering the overarching function at issue here discretionary, no regulation can render an act associated with that function ministerial.

### *Mississippi Code Section 65-1-67*

¶22. The defendants appear also to argue that they enjoy discretionary-function immunity from Adams's claims that they violated Mississippi Code Section 65-1-67. They couch their argument in different terms, asserting that the section "does not apply," but the crux of their argument is, again, their exercise of discretion. The first paragraph of Section 65-1-67 requires MTC

> to have the State Highway Department trim with edge lines, of a color and in a manner which conforms with uniform national standards relating thereto which have been adopted by the Federal Highway Administration, the edges of all state-designated hard-surfaced highways which are constructed of asphaltic material, in the interest of public safety on said highways.

Miss. Code Ann. § 65-1-67 (Rev. 2012). The second paragraph carves out an exception for roads under construction:

12

> Except as necessary to accommodate reconstruction, no road or highway shall be opened for public use until the department has complied with the provisions of this section; however, the Director of the State Highway Department may permit segments of roads under contract for maintenance, construction or reconstruction to be open for public use when temporary center line markings are installed.

*Id.* Photographs produced in discovery show—and the parties do not dispute—that on the night of the accident there was no white edge line where Adams wrecked, but there was a temporary center line. The defendants argue that the statute affords them the discretion to open an under-construction road as long as there is a temporary center-line marking, and that "MDOT's duty to edge the state's roads and highways does not apply where the road is under 'reconstruction.'"

¶23. Adams counters that, while some discretion may exist, MTC has decided—by mandating that the Red Book govern all construction contracts and by expressly incorporating it into the Traffic Control Plan here—to abide by the prescriptions in that manual. And since one of the sections—namely 618.03.3, discussed above—provides that all "edge lines . . . that have been covered or removed during the day's operations *shall* be replaced with temporary stripe before work is discontinued for the day . . . ," the defendants cannot now assert the discretion allowed by Section 65-1-67.

¶24. We agree with Adams. The plain language of the statute does not support the interpretation that the defendants can ignore the express requirements of the Red Book, and, by extension, the Traffic Control Plan. We are not persuaded by their argument that the second paragraph of Section 65-1-67 allows MTC to not comply with the regulations it adopted and incorporated into the Traffic Control Plan here.

13

## 2.    Mississippi Code Section 65-1-65 imposes a ministerial duty.

¶25.    Mississippi Code Section 65-1-65 requires MTC to, among other things, have MDOT "organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times." Miss. Code Ann. § 65-1-65. This Court held in *Little v. Mississippi Department of Transportation*, 129 So. 3d 132, 138 (Miss. 2013), that "[b]ecause Section 65-1-65 requires the Department to maintain and repair state highways, that duty—and all acts in furtherance of that duty—are ministerial unless, as in *Montgomery*, another statute makes a particular act discretionary." *Little*, 129 So. 2d at 138.[7]

¶26.    Adams argues that the defendants breached the ministerial duties imposed by Section 65-1-65. But the defendants argue that Section 65-1-65 does not impose a ministerial duty here because it applies only to roads "which have been or which may be hereafter taken over by the State Highway Department for maintenance . . . ." The defendants argue that, because this portion of I-10 was under reconstruction, it was not "taken over" at the time of the accident, and thus Section 65-1-65 does not apply. The defendants' only authority for this proposition is *Montgomery*, in which this Court noted that

> the decision to build a road and the initial placement of traffic control devices is of the planning nature, involving public policy considerations. *Bailey Drainage Dist. v. Stark*, 526 So. 2d 678, 681 n.1 (Fla. 1988). However, once the road is built and the responsible entity becomes aware of a dangerous condition in connection with the road, the duty becomes one of maintenance.

---

[7]The "other statute" present in *Montgomery* was Section 63-3-305, which is nearly identical to Section 63-3-303 except that it applies to "local authorities." *Mississippi Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 796 (Miss. 2012); Miss. Code Ann. § 63-3-305.

14

*Montgomery*, 80 So. 3d at 798 (quoting *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 264 (Miss. 1999)).  In other words, the defendants ask this Court to find that this section of I-10 was not "built" because they were adding two lanes.

¶27.    But Mississippi Code Section 65-3-3 provides that certain roadways in Mississippi, including I-10, "are designated as state highways and shall be under the jurisdiction of the Mississippi Transportation Commission for construction and maintenance . . . ." Miss. Code Ann. § 65-3-3.  The defendants have cited no authority for the fiction they advocate here: that while Section 65-1-65 applied to the part of I-10 on the completed side of the orange barrels, it did not apply on the construction side, because that was merely a road that had yet to be "built."  We reject this argument and find that Section 65-1-65 applied to the portion of the highway that was under construction and did, consistent with *Little*, impose a ministerial duty of maintenance and repair upon the defendants.

### 3.    The defendants are not immune under Mississippi Code Section 11-46-9(1)(p) because Adams does not claim MTC's plans were deficient; Adams claims MTC's plans were not followed.[8]

¶28.    The defendants also argue that they are immune under Mississippi Code Section 11-46-9(1)(p) because all of Adams's claims about traffic-control devices are actually claims that MTC's plans were deficient.[9]  According to the defendants, "Adams'[s] claims that this

---

[8]The defendants mentioned several other MTCA subsections at the trial-court level, but since they failed to pursue those on appeal, we consider them abandoned. *Bannister v. State*, 731 So. 2d 583, 588 (Miss. 1999). Therefore, only subsections (d) and (p) are before the Court in this appeal.

[9](1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . .

15

or that traffic control device or sign should have been placed here or there spring from MDOT's plans and designs . . . ." But the record belies this claim: Adams specifically argues that the construction plans incorporated the Red Book requirements and that the defendants and Mallette Brothers then violated those requirements. We find nothing in Adams's complaint, pleadings, or arguments on appeal that can fairly be construed as a claim that MTC's plans were deficient.

### 4. The defendants' causation argument is not properly before this Court.

¶29. The defendants argue, for the first time on appeal, that "[e]ven if some of Adams's claims point to functions and duties that are deemed ministerial, which is denied, Adams failed to bring forth summary-judgment type evidence to establish her negligence claim." But this issue is not properly before this Court. The record is clear that, at every point prior to this appeal, the only litigated issue was if the MTCA barred Adams's claims.

¶30. Most importantly, the trial court's order and the hearing transcript show that the trial judge never addressed this issue and was never asked to do so. "One of the most fundamental and long established rules of law in Mississippi is that the Mississippi Supreme Court will not review matters on appeal that were not raised at the trial court level." *Shaw v. Shaw*, 603 So. 2d 287, 292 (Miss. 1992) (quoting *Estate of Myers v. Myers*, 498 So. 2d 376, 378 (Miss. 1986)) (internal quotation marks omitted). At the defendants' behest, the

---

(p) Arising out of a plan or design for construction or improvements to public property, including, but not limited to, public buildings, highways, roads, streets . . . .

Miss Code Ann. § 11-46-9(1)(p) (Rev. 2012).

trial-court proceedings were limited to their immunity defense, and we decline to address any new matters on appeal.

## CONCLUSION

¶31.   For the reasons discussed above, the defendants' assignments of error are without merit, and the trial judge did not err when he denied their motion for summary judgment. We therefore affirm the judgment of the Jackson County Circuit Court and remand the case to the trial court for further proceedings consistent with this opinion.

¶32.   **AFFIRMED AND REMANDED.**

**DICKINSON, P.J., KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND RANDOLPH, P.J. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**MAXWELL, JUSTICE, CONCURRING IN RESULT ONLY:**

¶33.   The majority relies on ***Brantley v. City of Horn Lake***[10] to conclude the defendants do not enjoy discretionary-function immunity. While I agree the defendants are not immune, I cannot join the majority in full. In my view, ***Brantley*** marked an unwise and unworkable departure from longstanding precedent. So I join other voices from this court that disagree

---

[10] ***Brantley v. City of Horn Lake,*** 152 So. 3d 1106 (Miss. 2014).

17

with the recent break from precedent.[11]  Instead, I would readopt the longstanding public-policy function test.

### *Stare Decisis*

¶34.    I do not take this position lightly.  "The doctrine of *stare decisis* is the bedrock of our system of jurisprudence."  *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 634 (Miss. 1991) (quoting *Laurel Daily Leader, Inc. v. James*, 224 Miss. 654, 681, 80 So. 2d 770, 780-81 (1955) (Gillespie, J., Special Opinion)).  This doctrine is based on the premise that,  "when a majority of the Court speaks, it speaks as the voice of the State, and is binding in effect until and unless overruled." *Id.* (quoting *Childress v. State*, 188 Miss. 573, 577, 195 So. 583, 584 (1940)).  Thus, "absent powerful countervailing considerations, like cases ought to be decided alike." *Id.*

¶35.    But with this notion in mind, it was the majority in *Brantley* that disregarded *stare decisis*.  *See Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1115 (Miss. 2015) (Waller, C.J., dissenting) (characterizing the majority's new test as a "depart[ure] from . . . precedent without regard for the fundamental legal doctrine of *stare decisis*").  In doing so, the majority overruled fifteen years of cases applying the public-policy function test.  *Brantley*, 152 So. 3d at 1112; *see also* *City of Magee v. Jones*, 161 So. 3d 1047, 1050-51 (Miss. 2015)

---

[11] *See* ***Crum v. City of Corinth***, 183 So. 3d 847, 853 (Miss. 2016) (Randolph, P.J., concurring in result only); ***City of Magee v. Jones***, 161 So. 3d 1047, 1052 (Miss. 2015) (Pierce, J., dissenting); ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1115-17 (Miss. 2015) (Waller, C.J., dissenting);  ***Brantley***, 152 So. 3d at 1118-1123 (Waller, C.J., concurring in part and in result).

(discussing how "this Court's rules for determining discretionary-function immunity have changed drastically . . . in light of the new test set out . . . in **Brantley**").

¶36.   I do understand that the **Brantley** majority's aim was to resolve the struggle with how to apply discretionary-function immunity by articulating what it deemed a more "workable rule." **Brantley**, 152 So. 3d at 1112.  Unfortunately, however, the **Brantley** test missed its mark, proving itself to be unworkable and confusing to practitioners in its short eighteen-month history.  The very reason we apply stare decisis is "so that trial courts can make correct decisions and lawyers can properly advise their clients." **United Servs. Auto  Ass'n v. Stewart**, 919 So. 2d 24, 30 (Miss. 2005).  And when attorneys are left unable to advise their clients on the applicability of discretionary-function immunity in the wake of **Brantley**, the whole argument for upholding "the new test" based on *stare decisis* is undermined.

**Public-Policy Function Test**

¶37.   The long-standing public-policy function test had two prongs.  First, the court would determine "whether the activity in question involved an element of choice or judgment[.]" **Brantley**, 152 So. 3d at 1112 (quoting **Miss. Transp. Comm'n v. Montgomery**, 80 So. 3d 789, 795 (Miss. 2012)).  If so, the court would next ask "whether that choice or judgment involved social, economic, or political-policy considerations." **Id.**  But the newly created test, by contrast, does not take policy into account.  I find this problematic because the entire purpose of discretionary-function immunity "is to prevent judicial 'second-guessing' of legislative and administrative decisions *grounded in social, economic, and political policy* through the medium of an action in tort.'" **United States v. Gaubert**, 499 U.S. 315, 323, 111

19

S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (emphasis added) (citation omitted).  So "when *properly construed*, the [discretionary function] exception protects only governmental actions and decisions based on considerations of public policy."[12]  *Id.* (emphasis added).  Thus, the policy prong—rather than imposing extrastatutory restrictions on immunity[13]—ensures the discretionary-function-immunity provision is properly construed.

¶38.    For this reason, I echo the separate opinions in *Brantley*, *Boroujerdi*, *City of Magee*, and *Crum v. City of Corinth*.[14]  I too would "rescind the *Brantley* analysis because it overcomplicates the process" by focusing on "sometimes arcane regulations."  *Crum*, 183

---

[12] In 1999, this court recognized that Section 11-46-9(1)(d) of the MTCA "appear[ed] to be patterned after 28 U.S.C. § 2680(a), the 'discretionary function' exception to the Federal Tort Claims Act."  *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999).  So this court adopted the United States Supreme Court's test for determining discretionary-function immunity.  *Id.* (adopting two-part test established in *Gaubert*, 499 U.S. at 322).

But the five-four majority in *Brantley* concluded that federal precedent should not be followed.  *Brantley*, 152 So. 2d at 1112.  Instead, the majority crafted a completely new test, purportedly "giving effect to the plain language of the statute," without any consideration for the underlying purpose of Section 11-46-9(1)(d).  *Id.*  However, the "plain meaning rule" applies only when a statute's words are unambiguous.  *See, e.g.*, *Buckel v. Chaney*, 47 So. 3d 148, 158 (Miss. 2010).  And the great pains the majority in *Brantley*—as well as the majority in *Brantley*'s precursor, *Little v. Mississippi Department of Transportation*, 129 So. 3d 132, 137-38 (Miss. 2013)—takes to explain the phrase "discretionary function or duty" points to the fact Section 11-46-9(1)(d)'s language is not unambiguous.  Instead, other interpretive tools must be used.  And I think this court got it right back in 1999, when it recognized the best tool was the Federal Tort Claims Act, after which our state's act was patterned.

[13] *See Brantley*, 152 So. 3d at 1112.

[14] *Crum*, 183 So. 3d at 853 (Randolph, P.J., concurring in result only); *City of Magee*, 161 So. 3d at 1052 (Pierce, J., dissenting); *Boroujerdi*, 158 So. 3d at 1115-17 (Waller, C.J., dissenting); *Brantley*, 152 So. 3d at 1118-1123 (Waller, C.J., concurring in part and in result).

So. 3d at 854 (Randolph, P.J., concurring in result only). And it does not address the real question—are the alleged negligent actions "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. I would instead readopt the simpler, less confusing, longstanding, direct public-policy function test.

¶39. Turning to this case, if the public-policy function test were applied here, the result would be the same. The alleged failure to adequately notify travelers about a closed lane in a construction zone can hardly be said to be grounded in social, economic, or political policy. Thus, by permitting this case to survive summary judgment, this court is not judicially second-guessing MTC or MDOT policy. Rather, the court is simply allowing Adams to continue to pursue her claim that the defendants acted negligently. So I concur in the result reached by the majority—that the defendants are not entitled to discretionary-function immunity.

**WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION.**