# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01056-SCT

*YAHENACY SMITH, A MINOR, BY AND*
*THROUGH HER NATURAL MOTHER AND NEXT*
*FRIEND, FELICIA SMITH*

*v.*

*LEAKE COUNTY SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2015 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| TRIAL COURT ATTORNEYS: | MATTHEW Y. HARRIS |
| | MICHAEL J. WOLF |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KURT A. MORD |
| | MATTHEW Y. HARRIS |
| ATTORNEY FOR APPELLEE: | MICHAEL J. WOLF |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 07/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     After a year of bullying and intimidation by a small group of students, Yahenacy Smith[1] was beaten and severely injured while riding the school bus home. Smith sued the Leake County, Mississippi, School District, alleging negligence and negligence *per se*. The

---

[1] For purposes of this action, "Smith" will be used for the named plaintiff, Yahenacy Smith, a minor, by and through her natural mother and next friend, Felicia Smith.

circuit court found that the school district was entitled to discretionary-function immunity and granted the school district's motion for summary judgment. Smith appealed. Finding that the broad governmental function of the school district here is ministerial, we reverse the circuit court's grant of summary judgment and remand the case to the circuit court for Smith to proceed with her claims.

## FACTS AND PROCEDURAL HISTORY

¶2.      Smith, a special-education student in the sixth grade, attended Leake Central Junior High School, located in the Leake County, Mississippi, School District ("Leake Central"). Helen Luckett and four other girls had established a pattern and practice of bullying Smith which began during the previous, 2012-2013, school year and continued until the incident in this case. Smith's mother, Felicia Smith, had reported the bullying incidents and had asked the assistant elementary principal, the elementary principal, and the junior-high principal for help. On November 4, 2013, while riding the bus, Helen and her friends bullied Smith, including pulling Smith's hair. Smith's mother reported the incident to the school-bus driver. The bus driver then reported the incident to the school. For this incident, Helen received a five-day suspension from riding the school bus.

¶3.      Even though the school had suspended Helen from riding the bus, the school principal placed Helen on the same bus as Smith on November 5, 2013. The principal stated that there was no other appropriate transportation available that day to take Helen home. The principal sat Helen down at the front of the school bus, away from Smith, and under the bus driver's supervision. Helen and the other four girls attacked Smith as the bus was on its after-school

2

route. They broke Smith's wrist and punctured her scalp by beating her with a metal belt buckle until she lost consciousness. The bus driver stopped the bus and called a county resource driver. Smith then was transported to the Baptist Medical Center in Leake County for treatment. The school expelled Helen for the incident.

¶4.     Smith sued Leake Central in September 2015. She alleged claims of common-law negligence and claims of negligence *per se* under Sections 37-9-69, 37-11-67, and 37-11-69 of the Mississippi Code.[2] *See* Miss. Code Ann. §§ 37-9-69, 37-11-67, 37-11-69 (Rev. 2013). Smith affirmed that all claims were subject to the Mississippi Torts Claims Act ("MTCA"). Leake Central raised several defenses under Section 11-46-9 of the MTCA, including discretionary-function immunity. *See* Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

¶5.     Leake Central then filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6), or alternatively, under Rule 56. Both parties submitted briefs to the circuit court. Since Leake Central attached an affidavit from the school principal to its motion to dismiss, the circuit court found that Leake Central's motion had been converted into a motion for summary judgment under Rule 56. *See* Miss. R. Civ. P. 56.

¶6.     In its order, the circuit court found that, when fully examined under the new paradigm established in ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014), Sections 37-9-

---

[2] She alleged the District negligently had failed to provide ordinary care by failing: to properly supervise students, to properly discipline students, to hold students to strict account for disorderly conduct on school grounds, to properly monitor students, to provide a safe environment for students, and to use ordinary care. She claimed that Leake Central was further liable for negligence *per se* for failing to "hold the pupils to strict account for disorderly conduct at school . . . ." in violation of Section 37-9-69 of the Mississippi Code; and for allowing bullying or harassing behavior to occur and continue in violation of Sections 37-11-67 and 37-11-69 of the Mississippi Code.

69, 37-11-67, and 37-11-69 of the Mississippi Code did not create ministerial duties for Leake Central and that the actions taken by Leake Central were discretionary. The circuit court found that, collectively, the ministerial demand was that school districts create policies which address bullying. But the circuit court believed that Leake Central's handbook and the antibullying policy made the response of the school district to threats posed by potential bullies discretionary.[3] Additionally, the circuit court noted that Sections 11-46-9(1)(x) and 37-11-57 of the Mississippi Code each separately provide immunity for school officials in maintaining control and discipline of students. Thus, the circuit court found Leake Central was entitled to immunity and granted Leake Central's motion for summary judgment.

¶7.     Smith appeals and raises the following issues, which we restate as follows: (1) whether Leake Central's governmental function was ministerial or discretionary; (2) whether the immunity afforded to acts taken by school officials to maintain control and discipline of students applies only to claims by those students to whom school officials administered control and discipline; (3) whether Smith exhausted her administrative remedies; and (4) whether the circuit court erred in refusing to allow Smith to provide rebuttal testimony at the motion hearing in response to the school principal's affidavit.

**ANALYSIS**

---

[3] The circuit court stated that "[s]ignificant also, is the fact that in order to achieve the goals of protecting students from bull[ies], the district is again called upon to use it's [sic] discretionary power under 37-9-71." *See* Miss. Code Ann. § 37-9-71 (Rev. 2013) (the school official "shall have the power to suspend . . . for . . . misconduct . . . on the road to and from school . . . in the determination of the [school official].").

4

¶8.    The standard of review for a trial court's determination that a governmental entity is immune under the MTCA is *de novo*. ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1109 (Miss. 2015). A *de novo* review also is applied to a trial court's award of summary judgment. ***Id.*** Appellate courts are to consider all of the evidence in the light most favorable to the nonmoving party. ***Id.*** (quotation omitted). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," and the nonmovant may not "simply rest upon the mere allegations or denials of his pleadings." ***Id.*** (quotation omitted).

## I.    Whether Leake Central's governmental function is ministerial or discretionary.

### A.    The Mississippi Tort Claims Act

¶9.    The MTCA "provides the exclusive civil remedy against a governmental entity . . . for acts or omissions which give rise to a suit." ***L.W. v. McComb Separate Mun. Sch. Dist.***, 754 So. 2d 1136, 1138 (Miss. 1999). "Any tort claim filed against a governmental entity or its employee shall be brought only under the MTCA," and a school district is a governmental entity under the MTCA. ***Id.*** at 1139. Under the MTCA, sovereign immunity is waived for claims for money damages arising out of the torts of governmental entities and their employees, unless they are explicitly exempted from this waiver under Section 11-46-9(1) of the Mississippi Code. ***Id.*** at 1138-39. In pertinent part, Section 11-46-9-(1) of the Mississippi Code provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties *shall not be liable* for any claim:
> . . .
> (b) Arising out of any act or omission of an employee of a governmental entity exercising *ordinary care* in reliance upon, or in the execution or performance

5

of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;

. . .

(d) Based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;

Miss. Code Ann. § 11-46-9 (1)(d) (Rev. 2012) (emphasis added). Summary judgment was granted to Leake Central based on discretionary-function immunity under Section 11-46-9(1)(d) of the Mississippi Code. So the issue before this Court is whether the circuit court erred in finding that Leake Central was immune under subsection (d).

### B.    Discretionary-Function Immunity

¶10.    The following test for reviewing discretionary-function immunity was established in

***Brantley v. City of Horn Lake***:

> The Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.

***Brantley***, 152 So. 3d at 1114-15.

¶11.    Under the first step of the ***Brantley*** test, Smith argues that the broadest governmental function of Leake Central is ministerial, since school districts neither have discretion in establishing school systems nor in organizing and operating schools. That is because Mississippi's Constitution states that "[t]he Legislature *shall*, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." Miss. Const. art. 8, § 201. The Legislature also

6

has enacted a series of statutes, which mandate: the establishment of a school district in every Mississippi county (Miss. Code Ann. § 37-5-1 (Rev. 2013)); the governance of these school districts by a school board (Miss. Code Ann. § 37-6-7 (Rev. 2013)); and that school boards *shall organize* a school in the counties of their jurisdiction. (Miss. Code Ann. § 37-7-311 (Rev. 2013)) (emphasis added). Although school districts have discretion in deciding *how* to operate and maintain certain aspects of school systems, Smith argues that school districts have no discretion in deciding *whether* to establish, organize, operate, and maintain school systems.

¶12. Leake Central disagrees and argues that these statutes do not serve to create a ministerial function as to how school officials discipline students. It is undisputed that providing public schools was never left to the discretion of the county. It seems clear that the broadest governmental function of a school district is to provide free public education. *See* Miss. Const. art. 8, § 201. But the Constitution and the cited statutes are silent as to Leake Central's function as it pertains to providing a safe school environment and preventing bullying. There are, though, three other statutes that address the function of providing a safe school environment and of preventing acts of bullying. *See* Miss. Code Ann. §§ 37-9-69, 37-11-67, 37-11-69 (Rev. 2013). So we must examine these statutes to determine whether they impose a ministerial or discretionary duty on Leake Central.

### C.     *Whether Section 37-9-69 of the Mississippi Code is ministerial.*

¶13. Smith argues that Section 37-9-69 of the Mississippi Code provides a direct obligation to maintain order and discipline in the school. This statute states, "[i]t *shall be the duty* of

7

each superintendent, principal and teacher in the public schools of this state . . . to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers *shall hold the pupils to strict account for disorderly conduct*" including on the way *from school*. Miss. Code Ann. § 37-9-69 (emphasis added).

¶14.    We consistently have held this statute applicable to cases such as Smith's in which a school district failed to exercise ordinary care in its execution of the mandate to provide a safe school environment for students. *See, e.g.*, ***L.W.***, 754 So. 2d at 1141-42; ***Lang v. Bay St. Louis/Waveland Sch. Dist.***, 764 So. 2d 1234 (Miss. 1999); ***Henderson v. Simpson Cty. Pub. Sch. Dist.***, 847 So. 2d 856 (Miss. 2003). Indeed, this Court recently has held that Section 37-9-69 of the Mississippi Code imposes upon school districts a ministerial duty to "use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment." ***The Moss Point Sch. Dist. v. Stennis***, 132 So. 3d 1047, 1050 (Miss. 2014). So, under our precedent, Section 37-9-69 of the Mississippi Code imposes a duty on Leake Central to hold Helen and the other girls to strict account for bullying and harassing Smith, including on the school bus on the way home from school.[4]

¶15.    As to this ministerial duty to provide a safe school environment, Leake Central counters that ***Moss Point*** relied on a line of cases that have been overruled. Next, Leake

---

[4] Leake Central argues that this Section 37-9-69 does not always create a ministerial duty. Leake Central cites ***Doe v. Rankin County School District***, 2014 WL 5448946, at *4 (Miss. Ct. App. 2014) (holding that, while Section 37-9-69 provides a ministerial duty to hold students accountable for disorderly conduct at school, it does not dictate how this duty is to be carried out.). But that decision was reversed by this Court on certiorari, and the case was remanded for the parties to present evidence and arguments under the test set forth in ***Brantley***. *See* ***Doe v. Rankin Cty. Sch. Dist.***, 189 So. 3d 616, 619 (Miss. 2015).

8

Central further attempts to distinguish *Moss Point* in that it was decided before *Brantley*. Thus, *Moss Point* offers no direction with respect to the new paradigm in which discretionary-function immunity might be considered. Both arguments are without merit.

¶16.    As to Leake Central's first argument that the line of cases cited in *Moss Point* has been overruled, those cases still stand for the proposition that Section 37-9-69 imposes a ministerial duty on school districts. In *Moss Point*, a student sued the school district for injuries she sustained in an off-campus assault by another classmate and that classmate's mother. *Id.* at 1048-49. The issue was whether the school district had a duty of care to the student at the time of the incident. *Id.* at 1049-50.

¶17.    This Court in *Moss Point* noted that "Section 11-46-9(1)(b) encompasses ministerial duties–those duties 'which ha[ve] been positively designated[,]' by 'statute, ordinance, or regulation.'" *Id.* at 1050 (quoting *Lang*, 764 So. 2d at 1240). This Court stated that "[t]his Court has recognized that Section 37-9-69 creates a ministerial duty wherein 'public schools have the responsibility to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment.'" *Id.* at 1050-51 (quoting *Henderson*, 847 So. 2d at 857 (quoting *L.W.*, 754 So. 2d at 1143)).[5]

¶18.    *L.W.*, the case cited in *Moss Point*, is still sound authority. The overruled portion of *L.W.* stated that "the statutorily imposed obligation to 'hold pupils to strict account,' a ministerial dictate, trumps the discretionary exception, regardless of the amount of discretion

---

[5] We note that, in the line of cases cited in *Moss Point*, Section 37-9-69 of the Mississippi Code was analyzed under Section 11-46-9(1)(*b*) of the MTCA, and *not* under discretionary-function immunity under Section 11-46-9(1)(*d*).

9

school personnel may exercise in carrying out this statutory obligation." *Id.* at 1142. This was overruled by ***Mississippi Transportation Commission v. Montgomery***, 80 So. 3d 789 (Miss. 2012). This Court in ***Montgomery*** stated:

> [T]o the extent *L.W.*, . . . may be read to condone an interplay between Section 11-46-9(1)(b) and Section 11-46-9(1)(d) to determine whether the discretionary conduct of the governmental entity is exempt from liability by applying the ordinary-care standard . . . [this case] and any other cases which stand for this proposition, are expressly overruled. We clarify that, in determining whether a governmental entity is exempt from liability under Section 11-46-9(1)(d), the two-part public function test . . . must be used.

*Id.* at 797.[6]

¶19.    So, while *L.W.* was overruled, that action was limited to the proposition that governmental entities must use ordinary care in exercising a discretionary function. *L.W.* still stands for the proposition that Section 37-9-69 of the Mississippi Code imposes a ministerial duty on school districts to provide a safe environment for their students. Thus, it was not error for this Court in *Moss Point* to rely on *L.W.*

¶20.    As to Leake Central's second argument that *Moss Point* is inapplicable because it was decided before *Brantley*–which established the new paradigm for discerning discretionary-function immunity–this argument also is without merit. Although this Court decided *Moss Point* before *Brantley*, it is important to note that *Moss Point* was handed down four months after *Little v. Montgomery*, 129 So. 3d 132 (Miss. 2013). *Brantley* was primarily a clarification of this Court's analysis in *Little*. *Brantley*, 152 So. 3d at 1113. And while *Moss Point* and other cases did not discuss Section 37-9-69 within the context of discretionary-

---

[6] *See also* ***Collins v. Tallahatchie Cty***., 876 So. 2d 284, 289 (Miss. 2004) ("[The] ordinary care standard is not applicable to Miss. Code Ann. § 11-46-9(1)(d)."). *Id.*

10

function immunity under Section 46-11-9(1)(d), it is clear from the language of the statute and *Moss Point* that Section 37-9-69 imposes a ministerial duty on Leake Central to provide a safe school environment.

¶21. Based on this Court's precedent, and when examined under Section 46-11-9(1)(d) and *Brantley*, Section 37-9-69 of the Mississippi Code imposes upon school districts a ministerial duty to provide a safe school environment. But the circuit court here, while acknowledging that Smith brought suit under Section 37-9-69 of the Mississippi Code, did not address this statute in its final order. Instead, the circuit court focused on Mississippi's Antibullying Statutes, to which we now turn our attention.

### D. Whether Mississippi's Antibullying Statutes impose a ministerial or discretionary duty.

¶22. Smith also argues that Sections 37-11-67 and 37-11-69 of the Mississippi Code do not provide an exception to the broad, ministerial, governmental function of a school district as it pertains to its duties to prevent acts of bullying. These statutes, Smith argues, impose upon school districts a ministerial mandate to take action, which prohibits acts of bullying.[7]

¶23. Mississippi's Antibullying Statutes state that "[n]o student . . . *shall* be subjected to bullying . . . by . . . [other] students. . . ." Miss. Code Ann. § 37-11-67(2) (emphasis added). Also, if a school employee witnesses a student being bullied, that school employee "*shall*

---

[7] Bullying is defined as "any physical act . . . that takes place on school property . . . or on a *school bus*." Miss. Code Ann. § 37-11-67 (1) (Rev. 2013) (emphasis added). Bullying can either "[p]lace[] a student . . . in actual and reasonable fear of harm to . . . her person . . ." or "[c]reate[] or is certain to create a hostile environment by substantially interfering with or impairing a student's educational performance, opportunities or benefits . . . ." Miss. Code Ann. § 37-11-67 (1)(a)-(b).

11

report the incident to the appropriate school official." Miss. Code Ann. § 37-11-67(4) (emphasis added). The antibullying statutes also state that "each local school district *shall* include in its personnel policies, discipline policies and code of student conduct a prohibition against bullying . . . and adopt procedures for reporting, investigating and addressing such behavior." Miss. Code Ann. § 37-11-69. Leake Central has adopted an antibullying policy. After examining the antibullying statutes, the circuit court concluded that:

> Collectively, the ministerial demand is that School Districts create policies, which address bullying. This section requires that districts include "anti-bullying" policies, there is no allegation that the defendant district failed in this ministerial regard. In fact, the district student handbook, and anti-bullying policy were provided in response to the motion.

¶24. The circuit court continued: "a review of the district handbook, regarding discipline, again describes a discretionary process, such as 'Consideration should be given to the age of the student, cause, nature, condition and frequency of misconduct.' . . . The very language of the discipline policy narrows the duties to the discretion of the school authority." The circuit court also noted that "the anti-bullying policy contains the qualifications 'when in the determination of the school superintendent' . . . . Such language makes the response of the school district to threats posed by potential bullies to be discretionary."

¶25. Smith argues that the circuit court erred in its analysis and that the language in Sections 37-11-67 and 37-11-69 of the Mississippi Code positively imposes a mandate on school districts to prevent acts of bullying against their students. The test for determining whether discretionary-function immunity attaches is not whether a political subdivision has discretion in deciding *how* to perform its duties; the test is whether a political subdivision has

12

discretion in deciding *whether* to perform its duties. ***Brantley***, 152 So. 3d at 1113 (citing ***Little***, 129 So. 3d at 138).

¶26.    Smith argues that, although the text here provides a school district with discretion in deciding *how* to act in preventing bullying against its students and *how* to implement antibullying policies, the text clearly provides no discretion to a school district in deciding *whether* to take action to prevent acts of bullying and *whether* to enact and implement antibullying policies. Thus, Smith argues, neither Section 37-11-67 nor Section 37-11-69 of the Mississippi Code provides an exception to the broad, ministerial, governmental function of a school district as it pertains to its duties to prevent acts of bullying.

¶27.    We agree. Examining discretionary-function immunity under Section 11-46-9(1)(d) and ***Brantley***, the overarching function involved–holding students to strict account for disorderly conduct and preventing acts of bullying–is ministerial. And while Sections 37-11-67 and 37-11-69 give Leake Central discretion as to *how* to prevent bullying, these statutes do not provide discretion as to *whether* to prevent bullying. Nor do these statutes override the ministerial statutory duty found in Section 37-9-69 to provide a safe school environment. For this reason, we reverse the judgment of the circuit court and remand the case to the circuit court for trial on the merits to determine whether Leake Central used ordinary care under Section 11-46-9(1)(b) of the Mississippi Code.

       **II.**    **Whether the immunity afforded to acts taken by school officials to maintain control and discipline of students applies only to claims by those students to whom school officials administered control and discipline.**

¶28. Smith argues that this Court should reverse the circuit-court judgment and remand the case because the circuit court made no specific findings as to how Section 11-46-9(1)(x) was a proper ground for an award of summary judgment. Smith also argues that this was an improper ground for an award of summary judgment, since actions taken to maintain control and discipline of students, as they apply under subsection (x), relate to the actions taken by school officials toward the students over whom they are exercising control and discipline, not students who are indirectly affected by the failure of school officials to control and discipline.

¶29. Section 11-46-9(1)(x) of the Mississippi Code states that governmental entities are not liable for any claims:

> Arising out of the administration of corporal punishment or the taking of any action to maintain control and discipline of students, as defined in Section 37-11-57, by . . . [an employee] of a public school district in the state unless the . . . [employee] acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety . . . .

Miss. Code Ann. § 11-46-9(1)(x) (Rev. 2012). Additionally, Section 37-11-57 of the Mississippi Code states that:

> Corporal punishment administered in a reasonable manner, or *any reasonable action to maintain control and discipline of students* taken by a public school teacher, assistant teacher, principal or assistant principal acting within the scope of his employment or function and in accordance with any state or federal laws or rules or regulations of the State Board of Education or the local school board or governing board of a charter school does not constitute negligence or child abuse. *No public school teacher, assistant teacher, principal or assistant principal so acting shall be held liable in a suit for civil damages alleged to have been suffered by a student as a result of the administration of corporal punishment, or the taking of action to maintain control and discipline of a student*, unless the court determines that the teacher, assistant teacher, principal or assistant principal acted in bad faith or with

14

malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety.

Miss. Code Ann. § 37-11-57(2) (Rev. 2013) (emphasis added).

¶30. In the final order, the circuit court noted that Leake Central also had sought immunity under these two sections. The circuit court stated that, while it is arguable that these statutes apply only in the "context of punishment of individuals, and not when students injure other students, the language of these statutes are [sic] not so limited. This court need not resolve that question, but the existence of these statutes certainly supports a broader public policy favoring immunity for school officials."

¶31. It is clear from a plain reading of the statute and caselaw that this subsection is inapplicable to this case. Leake Central's reliance on *Pigford v. Jackson Public School District*, 910 So. 2d 575 (Miss. Ct. App. 2005), also is misplaced. In that case, a mentally disabled student had been forcibly restrained during an outburst, resulting in injury to that child. *Pigford*, 910 So. 2d at 579. The Court of Appeals specifically noted that the Legislature had directed the courts to apply Section 11-46-9(1)(x) when a school official controls and disciplines a student under Section 37-11-57. *Id.*

¶32. But the injured party in *Pigford* is different from the injured party here. The injured party in *Pigford* was a student over whom the school official was exercising control and discipline. Smith is not that student. She is a student who was injured by another student over whom the school official was maintaining–or was failing to maintain–control and discipline. Sections 11-46-9(1)(x) and 37-11-57 are applicable only to claims by the student who was the object of discipline, and not injured third parties, such as Smith. Thus, while the circuit

15

court granted summary judgment in Leake Central's favor under Section 11-46-9(1)(x), this judgment is reversed and the case is remanded.

### III. Whether Smith exhausted her administrative remedies.

¶33. Smith argues that the circuit court's judgment should be reversed and the case remanded since the trial court made no specific findings about whether Smith had exhausted all administrative remedies before filing her notice of claim. And Smith also argues that this was an improper ground for an award of summary judgment since these administrative channels no longer provided a remedy to Smith after she was attacked by her fellow students.

¶34. We decline to address this issue, as we cannot find any reference to the exhaustion of administrative remedies in the circuit court's final order. The trial court clearly dismissed the action on other grounds. So this issue is not properly before this Court. Besides, the issue here is not about Leake Central's discipline of Helen; it is about Leake Central's failure to carry out the discipline imposed on Helen. The school had suspended Helen from riding the school bus. Then, that very same day, Leake Central placed Helen right back on that same bus with Smith. We fail to see what administrative remedies Smith could have exhausted here. So, as this case is not about Smith's dissatisfaction with the decision of Leake Central officials, any argument that Smith failed to exhaust her administrative remedies is irrelevant. Thus, this issue is without merit.

### IV. Whether the circuit court erred in refusing to allow Smith to provide rebuttal testimony at the motion hearing in response to the school principal's affidavit.

¶35.    Since the first issue is dispositive of this case, and as Smith has not given any information as to what Felicia Smith's testimony would have provided that would have been relevant to this issue, we decline to address this issue.

## CONCLUSION

¶36.    Collectively, Sections 37-9-69, 37-11-67, and 37-11-69 impose a ministerial duty on Leake Central to provide a safe school environment and prevent acts of bullying against students. Additionally, immunity for school officials for acts taken to maintain control and discipline applies directly to situations involving the students over whom the school official administered control and discipline, not situations involving third-party students such as Smith, who were indirectly injured. For these reasons, we reverse the circuit's court's judgment granting Leake Central's motion for summary judgment and remand this case to the circuit court for Smith to proceed on her claims.

¶37.    **REVERSED AND REMANDED.**

**KITCHENS, KING AND BEAM, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL, J. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.; LAMAR, J., JOINS IN PART. LAMAR, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.; DICKINSON, P.J., JOINS IN PART.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶38.    The plurality opinion achieves the correct result, yet "I maintain that the analysis first adopted by this Court in *Jones v. Mississippi Department of Transportation*[8] simplifies the

---

[8]*Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256 (Miss. 1999).

17

inquiry and would result in more predictive results for plaintiffs and defendants alike." ***Crum v. City of Corinth***, 183 So. 3d 847, 853 (Miss. 2016) (Randolph, P.J., concurring in result only). A ***Brantley***[9] analysis "overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations—creating extra layers of proof, which may have little or no practical effect on the actual negligent act." ***Id.*** at 854.[10] The entities entitled to immunity and their attorneys face similar obstacles, for immunity could be defeated by the existence of some obscure statute, ordinance, rule, or other regulation that the entity never would have foreseen to be an issue. ***Brantley*** places little to no value on the purpose of discretionary-function immunity—"to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." ***Jones***, 744 So. 2d at 260 (quoting ***United States v. Gaubert***, 499 U.S. 315, 323, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). We ought not second-guess policy decisions left to and properly made by a coordinate branch of government.

¶39.    ***Jones*** adopted a workable test upon which the bench and bar could analyze a discretionary-function exception to the waiver of sovereign immunity as provided by Section 11-46-9(1)(d).

---

[9]***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014).

[10]Many of these cases are filed by general-practice attorneys who lack familiarity with administrative and regulatory law.

The discretionary-function exceptions of the Federal Tort Claims Act and the Mississippi Tort Claims Act are practically identical.[11] For determining the application of discretionary-function immunity, the United States Supreme Court formulated the "public-policy function test." *See **United States v. Gaubert***, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). This Court adopted the same public-policy function test in our analysis of the MTCA's discretionary-function exception in ***Jones***, recognizing that the provision in the MTCA was patterned after the identical provision in the FTCA.

***Crum***, 183 So. 3d at 853-54. That foundational test remained in place for fourteen years.

¶40. Then an incremental shift occurred in ***Little v. Mississippi Department of Transportation***, where this Court held that immunity depends on "the *function* performed—not the *acts* that are committed in furtherance of that function." ***Little v. Miss. Dep't of Transp.***, 129 So. 3d 132, 136 (Miss. 2013). The ***Little*** Court further held that, "where a statute mandates the government or its employees to act, all acts fulfilling that duty are considered mandated as well, and neither the government nor its employees enjoys immunity." ***Id.*** at 138.

¶41. Just as wind and water may compromise a structural foundation, incremental changes can erode the foundational basis upon which laws are interpreted. While ***Little*** itself did not announce an abandonment of the public-policy function test, the ***Brantley*** Court later proclaimed ***Little*** stood for that principle. *See **Brantley***, 152 So. 3d at 1112-13 ("Recently,

---

[11]*See* 28 U.S.C. § 2680(a) (granting immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"); Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012) (granting immunity for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused").

this Court effectively abandoned the public-policy function test and clarified the standard for determining whether discretionary-function immunity applies. . . . In reaching that decision, the Court did not rely upon the public-policy function test at all.") (citing *Little*, 129 So. 2d at 138).

¶42.    Notwithstanding the original application of the public-policy function test, the *Brantley* Court further posited that "the Mississippi statute's explicit language requires us to abandon the public-function test, because its language does not limit the immunity enjoyed in the exercise of a discretionary function to discretion involving policy judgments." *Id.* at 1116. Two months later, in *Boroujerdi v. City of Starkville*, this Court proclaimed that *Brantley* "greatly changed the manner in which this Court analyzes discretionary function immunity." *Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1111 (Miss. 2015). The *Brantley* analysis claims to better effect legislative intent by "return[ing] to a strict application of Mississippi's statutory language." *Brantley*, 152 So. 3d at 1112. But this claimed "return" totally ignored specific subsequent legislative acts.

> The Legislature amended the MTCA after we adopted the public-policy function test in *Jones* and made no intimation that we had adopted an incorrect test or interpretation of the statute. *See McDaniel v. Cochran*, 158 So. 3d 992, 1000 (Miss. 2014) ("The Legislature is assumed to be aware of judicial interpretations of its statutes, and . . . we must conclude that the legislative silence amounts to acquiescence.") (internal citations omitted). "[A]bsent legislative action, [our interpretations] become a part of the statute." *Id.* The Legislature's decision not to change the language of the MTCA should be honored, as should the *Jones* decision. *Brantley* inappropriately altered the legislatively endorsed test.

*Crum*, 183 So. 3d at 853-54. *See also Boroujerdi*, 158 So. 3d at 1115 ("A thorough review of the majority opinion reveals no mention of the Legislature's reenactment of Section

11–46–9 eight years after this Court's holding in *Jones*, which serves as evidence of the Legislature's approval and incorporation of the public-policy function test into the statute.") (Waller, C.J., dissenting).

¶43.   This Court has tinkered with the immunity enigma since it was first brought before the Court. What once was a workable solution now has been jettisoned. In a series of cases, the Court has muddled the analysis, abandoned its foundation, and created a legal quagmire. The Court has rejected opportunities to return to the original analysis, instead offering opinions bereft of standardization. Plaintiffs and defendants, along with the trial bench and bar, deserve predictability in the application of our law. Following *Brantley* and its progeny, only select attorneys are able to evaluate claims and/or defenses related to discretionary immunity. *Brantley* and its progeny leave our trial judges to guess randomly how their discretionary-immunity judgments will be evaluated on appeal. *Brantley* and its progeny leave the sovereign and its subdivisions, in many situations, unable to know, before engaging in certain conduct, whether their conduct is protected by immunity. Likewise, injured parties are left with uncertainty as to whether they may claim money damages, or whether the governmental entity is exempt from liability. *See* Miss. Code Ann. §§ 11-46-5(1), 11-46-9(1)(d).

¶44.   In *Boroujerdi*, Chief Justice Waller lamented: "Erasing fifteen years of precedent on this issue . . . is a careless measure that will likely create chaos for the trial bench and bar, which have a right to expect consistency from this Court." *Id.* at 1116.

> Based on the almost identical language of the MTCA and [the] FTCA, I believe there is a practical and rational basis for the Mississippi Supreme Court

21

to interpret the MTCA's discretionary-function exception as the United States Supreme Court has done for its identically worded federal counterpart. Consistency and clarity should be the watchwords in analyzing this heavily litigated area of law.

*Brantley*, 152 So. 3d at 1119 (Waller, C.J., concurring in part and in result). The chaos Chief Justice Waller predicted has come to fruition. Discretionary immunity is one of the most misunderstood and oft-criticized areas of law in our state. The bench and bar are regularly presented with an amalgamation of various interpretations from a multitude of justices on this Court and judges on the Court of Appeals, lacking a modicum of consistency and predictability. The need to return to the public-policy function test is self-evident.

¶45. "Employing the public-policy function test, we determine (1) whether the activity involved an element of choice or judgment, and if so, (2) whether that choice or judgment involved social, economic, or political policy." *Crum*, 183 So. 3d at 854 (citing *Dancy v. E. Miss. State Hosp.*, 944 So. 2d 10, 16 (Miss. 2006)).

¶46. Applying the public-policy function test to the case *sub judice*, the result is the same—the trial court erred in finding the school district was entitled to discretionary-function immunity. According to Section 37-9-69,

> [i]t *shall be the duty* of each superintendent, principal and teacher in the public schools of this state . . . to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers *shall* hold the pupils to *strict account* for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.

Miss. Code Ann. § 37-9-69 (emphasis added). Regarding bullying, "[n]o student . . . shall be subjected to bullying or harassing behavior by school employees or students." Miss. Code

Ann. § 37-11-67(2). Thus, the Legislature mandated that school districts, through their employees, enforce statutes and rules related to school operation and hold students *strictly* accountable for disorderly conduct on the way to and from school. One of the statutes school districts *must* observe and enforce is to take reasonable steps to ensure that students are not bullied by other students. As a result, the first prong of the public-policy function test is not met. Thus, I concur in the result reached by the plurality and would reverse and remand.

**MAXWELL, J., JOINS THIS OPINION.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶47. While I join the plurality's conclusion that Smith's claims implicate a statutorily imposed ministerial duty not provided immunity under the Mississippi Tort Claims Act, I believe this plurality opinion and past majority opinions have described that ministerial duty with language exceeding the bounds of the duty actually imposed by Mississippi Code Section 37-9-69. I also believe that Sections 37-11-67 and 37-11-69 impose no ministerial duty relevant to Smith's claims. So I concur in part and in result.

*The School's Duty Under Section 37-9-69*

¶48. Mississippi Code Section 37-9-69 states:

> It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account

23

for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.[12]

¶49.    Today's plurality joins past majority opinions in holding that this statute requires schools "to provide a safe school environment for students."[13] Two years ago, in ***Moss Point School District v. Stennis***, this Court stated that "[t]his Court has recognized that Section 37-9-69 creates a ministerial duty wherein 'public schools have the responsibility to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment.'"[14] That decision relied on ***L.W. v. McComb Separate School District***, where this Court discussed Section 37-9-69's application to Tort Claims Act immunity in a similar case involving an assault by one student against another.[15]

¶50.    There, after quoting the statutory language of Section 37-9-69, the Court cited Mississippi's compulsory attendance law and reasoned that "[s]ince the state requires all children to be enrolled in school, it only seems logical that the state should then require school personnel to use ordinary care in administering our public schools."[16]

¶51.    In other words, it is this Court's misreading of the statute and faulty logic, rather than Mississippi Code Section 37-9-69, that has imposed a ministerial duty to keep students and

---

[12] Miss. Code Ann. § 37-9-69 (Rev. 2013).

[13] Plur. Op. at ¶14.

[14] ***Moss Point Sch. Dist. v. Stennis***, 132 So. 3d 1047, 1050 (Miss. 2014) (quoting ***Henderson v. Simpson Cty. Pub. Sch. Dist.***, 847 So. 2d 856, 857 (Miss. 2003) (quoting ***L.W. v. McComb Separate Sch. Dist.***, 754 So. 2d 1136, 1143 (Miss. 1999))).

[15] ***L.W.***, 754 So. 2d at 1137, 1142, *overruled on other grounds by **Miss. Transp. Comm'n v. Montgomery***, 80 So. 3d 789 (Miss. 2012).

[16] ***L.W.***, 754 So. 2d at 1142.

24

campuses safe. Section 37-9-69 imposes no duty other than to "hold the pupils to strict account for disorderly conduct." That is the duty at issue in this case, and it precludes summary judgment based on discretionary-function immunity.

¶52. Smith claims that the school failed to take appropriate action to punish Luckett's past bullying behavior, and that the failure to do so proximately cause the injuries she suffered during Luckett's latest act of bullying. For breaches of that duty, the school district enjoys no discretionary-function immunity. Because the plaintiff claims the school failed to carry out its ministerial duty to hold Luckett to strict account for her past disorderly conduct, discretionary immunity does not apply.

### *Mississippi's Antibullying Statutes*

¶53. I agree with the plurality's analysis that Section 37-11-69's requirement that schools "adopt procedures for reporting, investigating and addressing" bullying in no way provides immunity for the school's failure to hold students to strict account for disorderly conduct under Section 37-9-69.[17] But, I do not join the plurality insofar as it holds that Mississippi's Antibullying Statutes impose a ministerial duty to *prevent* bullying.

¶54. Mississippi Code Section 37-11-67 says that no student shall be bullied and obligates school personnel to report bullying that has occurred, but says nothing of the school's obligation to ensure any particular result.[18] Likewise, Section 37-11-69 states that schools

---

[17] Miss. Code Ann. § 37-9-69 (Rev. 2013).

[18] Miss. Code Ann. § 37-11-67 (Rev. 2013).

must *prohibit* bullying—which indisputably occurred in this case.[19] But no statute has placed the exacting burden upon schools to prevent all bullying. Rather, it appears the Legislature has seen fit to obligate schools to enact rules against bullying, and to punish violations of those rules strictly, in hopes that this will deter future acts of bullying, rather than making schools strictly liable for any bullying that occurs on campus.

¶55. So, while I agree that Smith's claims should survive summary judgment based on her claim that the school failed to fulfill a ministerial duty—its obligation under Section 37-9-69 to hold students to strict account for disorderly conduct—I do not believe that this duty is derived from Mississippi's Antibullying Statutes.

**COLEMAN, J., JOINS THIS OPINION. LAMAR, J., JOINS THIS OPINION IN PART.**

**LAMAR, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶56. I write separately only to explain my vote. I concur with the plurality's result and all of its analysis, with the exception of its discussion of the Antibullying Statutes. I join Presiding Justice Dickinson's analysis of that issue where he finds that those statutes impose only a duty to prohibit and punish bullying, not to prevent it.

**BEAM, J., JOINS THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART.**

---

[19] Miss. Code Ann. § 37-11-69 (Rev. 2013).